Henderson Bridge Co. v. Commonwealth.

---

*CASE 89—PETITION ORDINARY—MAY 25, 1895.

# Henderson Bridge Company v. Commonwealth.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. FRANCHISE TAX.—The fact that a corporation created under the laws of the State of Kentucky for the purpose of constructing a bridge across the Ohio river, has obtained from the State of Indiana and from the Congress of the United States certain powers and privileges with reference to the construction of the bridge, is no reason why it should not pay a franchise tax in this State.

*This case was not sooner reported because pending an appeal in the Supreme Court of the United States. It was affirmed by that Court, and the opinion will be found in 166 U. S. page 150.

| | |
|---|---|
| 99 | 623 |
| 104 | 735 |
| 99 | 623 |
| 106 | 168 |
| 99 | 623 |
| 108 | 723 |
| 99 | 623 |
| o113 | 668, |
| 114 | 47 |
| o114 | 349 |
| 99 | 623 |
| 121 | 800 |
| 121 | 856 |
| 121 | 858 |
| 124 | 539 |
| 99 | 623 |
| 127 | 621 |
| 99 | 623 |
| 133 | 112 |
| 135 | 328 |

And even if the Kentucky charter had been supplemented by a similar charter from the State of Indiana, authorizing the construction of that portion of the bridge erected in that State, it would be no reason why it should not pay taxes on both its tangible property in this State, and its franchise granted in this State.

2. INTER-STATE COMMERCE.—A bridge company chartered by the State of Kentucky, and authorized to build a bridge across a stream which is the boundary line between this and another State, and to transport merchandise and passengers over its structure, in consideration of reasonable rates of toll, is not engaged in commerce; and the taxing of the franchise of such a corporation by the State of Kentucky is not an attempt to regulate commerce between the States, but merely the exercise of its right to tax the franchise of a corporation created by it.

3. CAPITAL STOCK—WHAT CONSTITUTES.—The "capital stock" of a corporation within the meaning of section 4079 of Kentucky Statutes prescribing the manner in which the value of corporate franchises shall be ascertained, includes the entire property, real and personal, tangible and intangible, and assets on hand, as well as the franchise of the corporation.

4. CORPORATE DEBTS NOT DEDUCTED.—A corporation, in assessing its property for taxation, can not obtain any credit for any debt it may owe. The Constitution requires that the property of all corporations must be taxed in the same manner as the property of individuals, and they are allowed no such credits.

5. BOARD OF VALUATION AND ASSESSMENT—PROCEEDINGS OF.—The proceedings of the board of valuation and assessment are judicial in their nature, and its findings, if not conclusive, are entitled to a high degree of consideration and authority, and should not be lightly set aside or disregarded by the courts, unless the board proceeded upon an erroneous principle, or adopted an improper mode or manner of estimating the value of the franchise, or unless fraud is charged and shown.

HELM & BRUCE FOR APPELLANT.

1. The method of assessment adopted by the Board of Valuation and Assessment is not in accordance with either the letter or spirit of the third article of the chapter on revenue and taxation providing for the taxation of franchises. The legislature evidently intended to arrive at the value of the stock in the limited sense of the word, and in the event that that value exceeded the assessed value of the tangible property, the difference should be set down as the value of the franchise. The legislature intended to tax only that value to the stockholders which is represented by this difference.

Henderson Bridge Co. v. Commonwealth.

2. The franchise granted by Kentucky is of absolutely no value except as it is used in connection with the franchise granted by Indiana and the federal government. As this State has no power to tax the franchise granted by another sovereignty, and as the franchise granted by this State if considered alone is of no value, the assessment based upon a value of the franchise granted by Kentucky is void. (California v. Pacific R. Co., 127 U. S., 1.)

3. The plaintiff's petition itself alleges, and it is admitted in the pleadings, that the appellant, Henderson Bridge Company, does a purely interstate business, doing absolutely no business wholly within the State. The question then arises, does the statute intend to tax the franchise to be or to do? If it can be construed into a tax of the franchise to be, it is sustainable. If, on the other hand, it is a tax of the franchise to do, as the company does a purely interstate business, it is equally clear that the statute is void.

4. In the case of the Philadelphia Steamship Co. v. Pennsylvania, 122 U. S., 326, the Supreme Court laid down a test for the determination of a question exactly similar to this. The court in that case upon an examination of the statute discovered that it applied to all corporations whether creatures of the State of Pennsylvania or other States, and as the statute treated them all alike, the court conclusively presumed that the attempt to tax the franchise was not the franchise to be, but the franchise to do, and, therefore, held the law to be void. That same test applied to the Statutes of Kentucky shows with equal clearness and by exactly the same process that the attempt here to tax the franchise was the franchise to do and not to be, therefore, upon the authority of the case stated, it is maintained that the statute is void.

5. This proposition does not conflict with the Massachusetts Telegraph Cases, in 125 U. S., 530, and 141 U. S., 40; nor with the Postal Telegraph Case, in 155 U. S., 695. It is, indeed, rather supported by the last-named case, as it clearly is by the case of Gloucester Ferry Company, in 114 U. S., 196. In the Massachusetts cases the court sustained the right to tax the franchise, only because it was a means adopted of arriving at the value of the franchise exercised within Massachusetts, and the court has invariably held that it would sustain a tax, without respect to the name applied to it, if it was the object of the legislature only to arrive at the value of the franchise exercised within the State attempting the tax.

In the case at bar, no part of the franchise being exercised upon business wholly within the State, the law should be declared void.

WM. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

Brief misplaced.

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

This was an action filed in the Franklin Circuit Court by the Commonwealth of Kentucky, against the Henderson Bridge Company seeking to recover of defendant the sum of $3,675.91, the amount of taxes claimed to be due and payable to the State by said company on its franchise, as a corporation, created by the laws of Kentucky, its property being located in the State of Kentucky, for and during the year 1894. Under a valuation and assessment made by the board of valuation and assessment by the auditor. secretary of state and treasurer, as established by law, valuing said franchise as of date September 15, 1893, the value of said franchise being fixed at $865,157.46, excluding therefrom the value of the real estate and personal property owned by said defendant in this State, said company being chartered and incorporated by the State of Kentucky as the Henderson Bridge Company.

The defendant having been so assessed, and the tax rate being 42½ cents on each $100 in value of its franchise, of which assessment defendant was duly notified, and demand being made for amount due, failed to pay.

The answer of defendant is divided into three paragraphs, not in either, however, denying its incorporation under and by the State of Kentucky, nor that its property and franchise is located in Kentucky. Defendant says: First. That though it obtained its charter from the State of Kentucky to build this bridge, yet, that it also obtained important rights, powers, faculties, franchises and privileges from the

State of Indiana. That under and by its charter from Kentucky it could only build its structure to low water mark on the north side of the Ohio river, that being the northern boundary of the State of Kentucky. Defendant recites in this paragraph sundry provisions from the general incorporation law of the State of Indiana, as of date March 2, 1875, as amended by act of legislature, of date April 8, 1881; showing specially by this amendment that any foreign corporation, duly incorporated under the laws of another State, to build bridges over any of the streams forming the boundary line between the State of Indiana and such other State, might have and enjoy all the rights, privileges and franchises granted under and by their general laws to any home company formed and incorporated under their laws for that purpose.

Then reciting other provisions under the general incorporation laws of the State of Indiana, whereby it says it was finally authorized to construct, build and operate so much of its structure as extended and was situated within the State of Indiana; and in addition, to build so much trestle and embankment and place thereon a railroad as would take trains crossing this bridge out to the Highlands. And it says that without these rights, privileges and franchises, the franchise granted by authority of Kentucky is and was of little or no value.

From the recitals of the law of Indiana as made, one might suppose that this company might have been incorporated under the laws of the State of Indiana had it so desired to extend and complete its structure and approach to this bridge on the Indiana side.

The material defect of this plea, however, is that it does

not allege that it was so incorporated, under and by any law, general or special, of the State of Indiana.

It only says that being incorporated under and by the laws of Kentucky as the Henderson Bridge Co., it was granted certain powers and privileges under the laws of Indiana, not denying that it actually leased nor that it now owns and operates its bridge and the approaches thereto under and by the charter and incorporation of the legislature of Kentucky.

But it may be further said: Suppose this charter was supplemented by a similar charter, by the State of Indiana, authorizing the construction of that portion of the bridge north of low water mark of the Ohio river. And that the State of Indiana levies and collects its tax both on the tangible property and the franchise. This would be but the exercise of a lawful and rightful authority and power.

What possible excuse could this be to the defendant for refusing to pay taxes on its tangible property in Kentucky, and on its franchises granted in Kentucky?

Is it possible that it may then obtain franchises from both States, and acquire property in both, and exercise its franchise powers in both and deny its duty to pay taxes to either? This part of defendant's plea is insufficient.

Again defendant says it was authorized and empowered to build and operate its bridge by permission and authority of the Congress of the United States, that Congress prescribed the dimensions and height of said bridge and provided that when built same should be deemed a post route. That these were important powers, franchises and privileges without which the incorporation of its company, nor any franchise granted it by the State of Kentucky, was of any value.

Henderson Bridge Co. v. Commonwealth.

It affirms in its brief the right and power of the Congress of the United States to charter companies and to grant franchises to same, to build bridges over any and all navigable streams in the United States, and cites in support of this contention the case of Saxton v.North River Bridge Co., reported in 153 U. S., page 525. It is not necessary in order to the decision of this case to question the power claimed, nor the authority of the case quoted. The Commonwealth is not undertaking in this suit to impose or collect any tax from defendant on any franchise granted it by authority of the United States, and hence this decision has no application.

The same objection lies to this part of the defendant's answer that is taken to that part of same pertaining to the State of Indiana. And that is, that defendant does not affirm (as, of course, it can not truthfully) that it was in fact incorporated under and by the authority of the United States or any act of Congress, or that it built its bridge under any such act of incorporation or authority. Not denying, as before stated, its incorporation under and by the laws of Kentucky, and not denying the fact that under and by said act of incorporation, it was created a body corporate, and from this charter it derived its powers to build and operate and collect tolls on said bridge.

Neither does counsel for defendant properly distinguish between rights, powers and franchises, granted by the State of Kentucky, under which it built and to-day owns this property, and the duties and burdens imposed by the Congress of the United States but confuses these duties and burdens with grants, privileges and franchises. In this, that while the defendant was created by the laws of Kentucky, and given the rights, powers and franchises that it enjoys in

the construction of this bridge, all that the Congress of the United States undertook to do was to impose certain burdens and limitations on this power by prescribing certain rules and regulations pertaining to the building of this bridge, so that its construction should in no wise interfere with the free navigation of the Ohio river. This was quite legitimate and altogether proper, and clearly within the power and duty of Congress. And again Congress declared that the bridge when so constructed and built should be deemed a post route. Yet, neither of these things can in any just or appropriate sense be regarded rights, powers, privileges or franchises conferred by the government of the United States, but as burdens imposed only. So this part of the answer of defendant was also defective and wholly insufficient. And the court below should have sustained the demurrer to the first paragraph of same embracing these items noticed.

The second paragraph of defendant's answer is as follows:

"The defendant says that its bridge between the city of Henderson and the State of Indiana is used entirely for transporting inter-State business, transporting passengers and freight between the States of Indiana and Kentucky. The defendant, therefore, insists and alleges that the imposition of a tax by the State of Kentucky upon the franchise of the defendant corporation is a tax upon its right to do inter-State business, and is an unlawful burden upon, and an attempt upon the part of the State of Kentucky to regulate commerce between the States, in violation of that provision of the Constitution of the United States which confers power on Congress to regulate commerce between the States."

The paragraph again shows gross misapprehension on the part of defendant and its counsel of the questions involved in this case.

This is a question, only, of the right of the State of Kentucky to levy and collect of defendant a tax upon its property owned and situated exclusively in Kentucky, and upon the value of its franchise as a corporation created under and by the authority of the State of Kentucky, and upon a business being wholly done within the borders and limits of the State, and this tax to the same extent precisely as that assessed and levied on all other corporations created by the laws of Kentucky, situated and doing business in its jurisdiction. This tax is assessed only to the extent that the property of all individuals owning property situated in Kentucky may be assessed and collected, and not a farthing more.

We are at a loss to see how this demand by the State of this corporation of the same tax that under the Constitution and laws of the State must be paid by all other corporations, has anything to do with regulating commerce between the States. Or how it in any wise interferes with the constitutional inhibition or any act of Congress ever passed on this subject.

We apprehend that neither under this clause in reference to the regulation of commerce between the States nor under any other clause in the Constitution, has Congress ever undertaken to lessen, impair, abridge or take away the right of any State within the federal Union to levy and collect the same rate of taxes on the property of corporations and individuals, situated and resident within its borders, though they may for the time being be engaged in commerce, that it levies upon the property of all other corpora-

tions and individuals. Certain it is that Congress has never yet undertaken to pass such a law, neither is it probable that it ever will undertake so to do, at least while its halls are filled with representatives of the people, worthy by reason of their intelligence and character to fill such high positions. And if such a dangerous and destructive law should be passed what lawyer doubts that the courts of the United States would immediately declare it null and void, as at once destroying the sovereign power of the States on this subject of taxation?

This defendant company is not engaged in commerce or transportation at all. It has no authority or power or franchise to engage in commerce or transportation. It was simply authorized to build this bridge and when built then the railroads, that may be engaged in transportation and so indirectly engaged in commerce, may transport merchandise and passengers over its structure, in consideration of a reasonable rate of toll for so doing. This is all, nothing more.

The defendant, the Henderson Bridge Company, is no more, in fact, not as much, engaged in commerce between the States as each and every railroad in the United States, that anywhere on its line may cross from one State into another carrying freight and passengers. And if under this pretense this bridge company can be rightfully and lawfully excused from the payment of its lawful taxes to the State of Kentucky, assessed and levied as we will hereafter demonstrate, at the same rate and estimated in the same mode or manner as that of all other taxes on corporations, then under the same pretext can the property of every railroad in the United States, whose line at any place extends from one State into another, and who is thus necessar-

ily engaged in transporting freight and passengers from one State into another, be likewise exempted from taxation. We deem this proposition incontrovertible, and simply to state it is to show the utter shallowness and fallacy of the pretext by and under which this defendant corporation seeks to shield and protect itself from its just and lawful share of the public burden.

In this case the property upon which this tax has been assessed, being only that portion of the structure that extends to the low water mark on the north side of the Ohio river, is as much within the territorial limits of the State of Kentucky as if it were situated at the geographical center of the State, and being so situated, is subject to the authority and lawful jurisdiction of the State to the same extent as any other piece of property in the limits of the State, subject only to the Constitutional inhibition that it shall in no wise obstruct the navigation of said stream.

The true line fixed by the original compact between Virginia and the federal government, whereby Virginia ceded her right to all territory north of the Ohio, was to low water mark on the north side of said stream; and this has always been recognized by both the States bordering on this stream as well as by the federal government. It has never been questioned.

This line, low water mark on the north side of the Ohio river, like all other lines, considered with reference to mathematical accuracy, has no element of width or space. It is as clearly and as sharply defined by its own terms as the lines between Indiana and Illinois or Ohio or Michigan.

This court has never questioned the right or the power of Congress to regulate commerce between the States in any and every legitimate way and manner. And yet it con-

fesses it has but little patience with the many unwarrantable and indefensible demands constantly being presented in this court, torturing and perverting this right into a protection for many derelictions of public duty.

We believe, however, this is the first time that this power has been appealed to to destroy the right of taxation by the State, of property situated within its territorial limits. The demurrer filed by the Commonwealth to this paragraph of the answer was properly sustained by the court below.

The only remaining question is as to the value of the franchise of the defendant corporation and the mode and manner of assessing same, these questions being presented (rather in an argumentative way) by the third paragraph of defendant's answer.

To show that the value of the franchise, as fixed by the board of valuation and assessment, at $865,157.46, is too high, and that the mode of ascertainment adopted was erroneous, the defendant relies chiefly on this clause, in the 4079th section of the Kentucky Statutes: "That said board, from said statement (referring to a sworn statement required to be made by the president of the company), and from such other evidence as said board may have, if such corporation, company or association be organized under the laws of the State, shall fix the value of the capital stock of the corporation, company or association as provided in the next succeeding section, and from the amount thus fixed shall deduct the assessed value of all tangible property assessed in this State or in the counties where situated. The remainder thus found shall be the value of its corporate franchise, subject to taxation as aforesaid.

The next section, pursuing substantially the same lines of procedure, applies to corporations organized under the laws

of other States, and having property and doing business in this State as well as in other States, provides for an assessment and an apportionment and as to the merits of this controversy is not material.

And to speak more definitely of defendant's contention, it depends on the meaning to be given to the words, "capital stock of the corporation," found in the section quoted.

This word stock we find used by legislators and by different judicial writers and courts in several different senses, and that its particular meaning must generally be determined by the matter in hand, the thing in the mind of the legislator or the court, the context as well as the clause wherein it may be found.

Mr. Lowell, in his work on Transfer of Stock, section 4, says: "Stock has been succinctly designated as, 'The sum of all the rights and duties of the shareholder.' Again it has been used to denote: First. The capital stock. Second. The shares of stock or of the stockholder. and third, as being applied so as to include both. While the term capital stock generally means the fund or property put in or subscribed by members of the corporate body, yet it may mean the capital put in, and the accumulation of same, not distributed as dividends or profits. Again it is said that the value of the capital stock is measured by that of the corporate property.

An interesting description of this term stock, or capital stock, and what it may mean is found in the case of People v. Coleman, 34 Am. & Eng. Cor. Cases, 223. We make the following extracts:

The capital stock of a company is one thing, that of the stockholder is another and a different thing. That of the company is simply its capital existing in money or property,

or both, while that of the stockholder is representative not merely of that existing and tangible capital, but also of surplus, of dividend-earning power, of franchise, and the good will of an established and prosperous business.

The capital stock of the company is owned and held by the company in its corporate character. The capital stock of the shareholders, they own and hold in different proportions as individuals. The one belongs to the corporation the other to the corporators. The franchise of the company which may be deemed its business opportunity and capacity, is the property of the corporation, but constitutes no part or element of the capital stock, while the same franchise does enter into and form a part, and a very essential part, of the shareholders' capital stock.

While the nominal or par value of the capital stock, and of the share stock is the same, the actual value is often widely different. The capital stock of the company may be wholly in cash or in property, or both, which may be counted and valued. It may have in addition a surplus, consisting of some accumulated and reserved fund, or of undivided profits, or both, but that surplus is no part of the capital stock. . . . But the surplus does enter into and form a part of the share stock, for that represents and absorbs into its own value, surplus as well as capital, and the franchise in addition. So that the property of every company may consist of three separate and distinct things, which are its capital stock, its surplus and its franchise. But these three things, several in the ownership of the company, are united in the stock of the shareholder."

The share of stock covers, embraces and represents all three in their totality, for it is a business photograph of all the corporate possessions and possibilities.

In this case while it is apparent that the court uses the term capital stock of the company or corporation in its most limited sense, it yet makes it clear that the corporation, the company, in its property rights, represents and embraces both capital stock, strictly so speaking, the tangible property owned by the company as well, the surplus, undivided earnings, if any, and the franchise, and while that court describes the shares of stock owned by the several individual members of the corporation as representing in interest and value all these things, yet the same things, all combined, constitute and are the property of the corporation or company.

So again we find it said by a New York court in 1st Sandf., Chancery, 307, "That the corporation is not limited in its ownership of property by the amount fixed as the capital stock."

Again Mr. Cook in his work on Stock and Stockholders, section 9, says: "That while capital stock is to be clearly distinguished from the amount of property owned by the corporation, yet, occasionally it happens that under the terms of stautes relating to taxation, which have been drawn without regard to the technical meaning of the words, the courts have construed the capital stock to mean all the actual property of the corporation, but this is for the purpose of carrying out the meaning of the statute, and is not the real meaning of the term.

Again it is said that the property of a corporation may embrace not only the property contributed by the stockholders, but that otherwise obtained by it under its charter. (See Williams v. Western Union Tel. Co., 93 N. Y., 162.)

Thus we see what a varied meaning this term capital stock may have. So that it becomes necessary to examine

and see what was the object and meaning of the legislature when using this term in the clause before quoted from section 4079 of our statutes.

In this examination it becomes important to notice those clauses of the Constitution in reference to revenue and taxation, and see what was contemplated and enjoined by that instrument in reference to taxation.

Section 172 provides "That all *property* not exempt from taxation by this Constitution shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale. . . ."

Section 174 provides "That all property, whether owned by natural persons or by corporations, shall be taxed in proportion to its value, unless exempted by this Constitution, and all corporate property shall pay the same rate of taxation paid by individual property. Nothing in this Constitution shall be construed to prevent the General Assembly from providing for taxation, based on income, licenses, or franchises.

Then it is manifest that what the Constitution intended to be taxed was property, all property. And as to corporations, not only all tangible property, but that it intended to leave the legislature of the State free to tax the franchises of corporations if it so desired.

That the property of a corporation should be taxed as the property of an individual, it will be observed that in these several sections quoted "capital stock," "stock," and "shares of stock," are not mentioned as being appropriate terms to designate the subjects of taxation, but it says property, all property, so that there might be no confusion as to what that instrument intended.

Neither is there any reason to suspect that the legislature

did not understand the language and meaning of the Constitution, when they came to frame the revenue laws of the State under it, now under consideration. Neither is there reason to suspect that it did not intend and endeavor in good faith to carry into effect the intent and meaning of the Constitution.

So that we may safely interpret all words and phrases (of doubtful or uncertain meaning), in accordance with and so as to effectuate and carry out that intent.

We find that the legislature, in framing the first revenue law under this new Constitution declared that all property, both real and personal, should be assessed for taxation at its fair cash value; at a fair voluntary sale, etc.

We find that by section 4020, the legislature, for the purposes of taxation of corporations, divided their property into tangible and intangible, leaving the tangible to be assessed by the officers of the county where the same was situated, but that as to the intangible (which term was used as synonymous with franchises), directed that that should be valued and taxed as provided in section 4077.

We find by section 4077 that every railway company or corporation . . . bridge company . . . as also every other corporation company or association, having or exercising any special or exclusive privilege or franchise, not allowed by law to natural persons or performing any public service, shall, in addition to the other taxes imposed on it by law annually pay a tax on its franchise to the State and a local tax thereon to the county, incorporated city, town and taxing district where its franchise may be exercised.

The auditor, treasurer and secretary of state are created a board of valuation and assessment for fixing the value of said franchise; they are to designate where this tax shall be

payable, and to apportion same where more than one juris-
diction may be entitled to a share of such tax.

Section 4078 gives some general directions as to how this
board of valuation and assessment shall proceed to deter-
mine the value of the franchise which is to be taxed.

It provides that the president or chief officer of such cor-
poration shall, between the 15th day of September and the
1st day of October, annually, make a statement under oath,
showing the following facts, viz: "The name, place of busi-
ness, kind of business, etc., engaged in. The amount of cap-
ital stock, preferred and common, the number of shares of
each, the amount of stock paid up, the par and real value
thereof, the highest price at which such stock was sold at
a bona fide sale within twelve months before the 15th day
of September of the year when the statement is made; the
amount of surplus fund and undivided profits and the
value of all other assets; the total amount of indebtedness,
the principal, the amount of gross or (and) net earnings or
income, including interest on investments, and incomes from
all other sources within twelve months next preceding the
time of making the statement; the amount and kind of
tangible property in this State and where situated, assessed
or liable to assessment in this State, and the fair cash value
thereof, estimated at the price it would bring at a fair vol-
untary sale and such other facts as the auditor may require.

All this indicating, as clearly as it is possible for language
to indicate, that the object of the legislature was that the
board of valuation and assessment should then be enabled to
form a correct estimate of the value of the entire property
of the company or corporation whose case they were invest-
igating.

Then follows the clause in section 4079, before quoted.

requiring the board from the statement and from all other evidence before it, to proceed to fix the value of the capital stock (meaning the entire property), of the company or corporation, and that from the amount thus fixed, that they shall deduct the assessed value of the tangible property of the company or corporation assessed in the State or in the county where situated and that the balance thus found should be the value of the corporate franchise subject to taxation as aforesaid.

So that the question returns, did the legislature mean by the expression "capital stock," only the amount of money that may have been paid in by the stockholders, or did it mean to embrace and include by that term the entire property of every kind and description, tangible and intangible, embracing not only capital stock originally paid, but all property afterwards acquired and then owned by the company, as well as any surplus, undivided profits then on hand and all other assets, as well as the franchise?

In the light of the foregoing provisions of the Constitution, and of the act of the legislature, and of the instructions given to the board of valuation and assessment and of the sworn statement demanded of the president of the company, on which, with other testimony to make this valuation, we are constrained to say that by this term capital stock the legislature meant to include the entire property, real and personal, tangible and intangible, all assets on hand, and its franchise as well, and that when so embraced and construed and valued as an entirety, then to take off the tangible property already assessed, and that the net balance will show and shall be the value of the franchise to be taxed under section 4077.

This was the construction given to these several clauses

by the board of valuation and assessment, and we enter-
tain no doubt of its correctness.

All the property of the corporation can not be taxed in
any other way. The total value of the property of this cor-
poration was thus fixed at $2,900,000, and the evidence in the
record abundantly supports the correctness of this estimate.

While it is true that the technical capital stock of the
company was based on $1,000,000, yet, under their charter
they were authorized to borrow money and issue bonds in
aid of the enterprise, for which they were incorporated, and
they did issue $2,000,000 in bonds, and put the proceeds of
these bonds, combining same with the $1,000,000 capital
stock in the building of their bridge and its approaches, so
that they had invested in said enterprise not only the $1,000,-
000 stock, but proceeds of the $2,000,000 in bonds. And the
evidence shows the property in its entirety is worth what
it cost.

But defendants argue that they should not be taxed on
the debt that it owes. It is not so taxed. Of course a debt
can not be made the subject of taxation, as against the one
who owes it.

But on the other hand neither can an outstanding debt
be deducted from the value of any property in assessing
same for taxation. It can not be done in behalf of an in-
dividual, is never done. And when the Constitution re-
quires that the property (not stock or capital stock, but
property of all corporations) must be taxed in the same man-
ner as the property of an individual, then it is manifest that
neither can a corporation in an assessment of its property
for taxation, obtain any credit for any debt that it may owe.
This proposition we think absolutely clear.

Furthermore, the board of valuation and assessment fol-

lowing out the line claimed by defendant after determining the value of the entire property of the defendant, fixing same at $2,900,000, deducted from this amount the value of said property, including the railroad and that portion of the bridge proper, situated beyond or north of low water mark, as shown by the evidence, and leaving as the value of the property in Kentucky the sum of $1,514,893, and this was then apportioned by deducting the value of the tangible property listed in Henderson county, namely, $649,735.54, and leaving $865,157.46 as the value of the franchise of defendant to be taxed under this proceeding.

These valuations are clearly within the evidence as shown by the record. It is supported both by the sworn statement of the president of the company (after correcting all mistakes in same.)

It may also be observed in the simple fact that the market value of the stock of the company is in the aggregate $900,000, when we know that the bonds taking precedence of the stock in the sum of $2,000,000 must be good, otherwise the stock could have no value and then that the property and franchise must be worth the $2,900,000.

Again it is shown that the annual gross income for the year preceding this valuation was $217,072.21, enough to pay an annual interest on both bonds and stock of more than seven per cent. Or making another estimate this $217,072 would pay an annual interest on the value of the tangible property as taxed in Indiana and given in to the county of Henderson of nearly seventeen per cent., so that the large earning capacity of the property based on its tangible value only authorizes us to assume that it lies in its franchise. which is the right to charge tolls on every locomotive, freight and passenger car, ton of freight and passenger that passes over its road.

And this rate of toll is practically up to this time in the discretion of the company, the legislature not having undertaken to limit or control same, and make same reasonable. But it is insisted by counsel in argument that the State of Kentucky has no right to tax the franchise granted by it to this company, and they rely upon the authority of the cases of California against The Pacific Railroad Companies, 127 U. S., 40. We have examined these cases and find that the facts upon which they are made to turn (the very foundation of the decision), are totally dissimilar and unlike the facts in this case, and consequently, that however sound and correct the law announced in those cases may be (and we do not question it), it has no application to this case.

Counsel for appellants copy some two pages of that decision into their brief, showing that the federal courts refused to allow the State of California to tax the franchise of said railroad company.

The court after devoting many pages of that decision to a recital of the facts of the cases before it, as found by the court below, and as the conclusion of fact on which the decision is made to turn, says:

"That if, therefore, the Central Pacific Railroad Company is not a federal corporation, its most important franchises (including that of constructing a railroad from the Pacific Ocean to Ogden City) were conferred upon it by Congress."

Hence the court properly concluded that the franchise of the road, being incorporated and granted by the federal government, was not subject to taxation by the State of California. A state of case wholly different from this case, as before shown in this opinion.

Mr. Morawitz in his work on Corporations section 929, speaking of franchises and their value, says: "Care must

be taken to distinguish between the different meanings of the word "value." One meaning of the word is price, or the amount for which a thing can be sold. In this sense franchises have clearly no value whatever, because by their nature they are not transferable. They can not be sold or leased or mortgaged, nor can they be taken under execution.

On the other hand, franchises clearly have a value, if the word "value" is used to signify the advantage derived from their possession, or, in other words, their utility. The value of a franchise, using the word "value" in this sense, would not be measured by the cost or difficulty of obtaining the franchise, or by its exclusive character, but by the benefit derived from its possession.

Thus the value of the franchise in this case aptly illustrates the meaning of the author.

It should be further said that the findings of this board of valuation and assessment partake of a judicial nature. The defendant had its day in court. It did appear on notice before that board and on evidence made its defense. And on this hearing that board rendered its decision in fixing the value of the franchise of defendant, granted by authority of the State of Kentucky, and this finding, if not conclusive, is entitled to a very high degree of consideration and authority, and it should not be lightly set aside or disregarded by the courts, unless the board proceeded upon an erroneous principle or adopted an improper mode or manner of estimating the value of the franchise, or unless fraud is charged and shown to exist.

It is not contemplated by the law that every corporation, company or association operating under and enjoying a franchise from the State, should simply by denying the correctness of the valuation placed on its franchise by this

board put again the whole thing in issue and have same re-heard and readjudicated by the courts. It would be an in-sufficient system of revenue for the State if the just taxes against every such corporation, company or association could only be collected at the end of a separate law suit against each.

We have thus gone into the merits of this case at some length, knowing the importance of a correct interpretation of our existing revenue laws, with reference to the taxation of the franchises of all corporations, companies and associa-tions operating under and enjoying the benefits of same, conferred by this State.

The court below disregarded the finding of the board of valuation and assessment as to the value fixed on the fran-chise of this defendant company, supported, as it was, by the only other evidence introduced on the trial of the cause, and fixed the valuation of said franchise for the purpose of taxation at the sum of $140,000 only, and rendering judg-ment for the Commonwealth on that basis (at $42\frac{1}{2}$ cents on the $100 value of same, as fixed by law), for the sum of $595. From that judgment both parties appealed.

That judgment was erroneous, and on the appeal of the Commonwealth, is reversed, but affirmed on the appeal of the Henderson Bridge Company. It is now ordered that same be set aside and held for naught, and this cause is remanded for further proceedings consistent with this opinion.