FIRST NAT. BANK v. STONE et al. SAME v. CITY OF LOUISVILLE. AMERICAN NAT. BANK v. STONE et al.

(Circuit Court, D. Kentucky. June 4, 1898.)

Nos. 6,569, 6,575, 6,576.

1. STATE TAXATION OF NATIONAL BANKS.

The Kentucky revenue act of November 11, 1892, providing for the taxation of banks and other corporations, as applied to national banks, is a tax, not on the franchise granted by congress, but on the equivalent in value of its shares of capital stock, and is not therefore in violation of Rev. St. U. S. § 5219, prescribing the manner in which national banks may be taxed by the states.

2. SAME—DISCRIMINATION.

When a state taxing statute by its terms is designed to operate equally upon all banks, state and national, but, through the application of the doctrine of res judicata, certain state banks are exempted from its operation, this does not result in such a discrimination against national banks as is forbidden by Rev. St. U. S. § 5219.

Helm & Bruce, for complainants.
Henry L. Stone, for city of Louisville.
W. S. Taylor, Atty. Gen., for Samuel H. Stone, etc., board of valuation and assessment of the state of Kentucky.

Before HARLAN, Circuit Justice, and TAFT and LURTON, Circuit Judges.

TAFT, Circuit Judge. The First National Bank was organized in October, 1863, under the national banking laws, and its charter rights were extended September 6, 1882. It did not formally accept the Hewitt act, in accordance with the terms of that act. The averment of the bill upon this point is:

"Your orator shows that from the 1st day of July, 1887, although it was not by the United States banking acts bound to submit to taxation under the 'Hewitt Bill,' it nevertheless did so, and from said date regularly reported to the auditor of public accounts of the state of Kentucky, under, and in accordance with the provisions of said Hewitt bill; and the said state, through its proper officers, received and appropriated said taxes paid by your orator as aforesaid. Your orator has no real estate, and never had. In the way above stated, your orator accepted the provisions of the Hewitt bill."

The American National Bank was organized after the passage of the Hewitt act, so that it could not accept that act in accordance with its provisions. The averment of its bill upon this point is:

"Your orator shows that from the 1st day of July, 1890, although it was not by the United States banking acts bound to submit to taxation under the

Hewitt bill, it nevertheless did so, and from said date regularly reported to the auditor of public accounts of the state of Kentucky, under, and in accordance with the provisions of said Hewitt bill; and the said state, through its proper officers, received and appropriated said taxes paid by your orator as aforesaid. Your orator has since its organization paid, to the city, taxes on the building in which it does business. In the way above stated, your orator accepted the provisions of the Hewitt bill."

Each of the bills in the above-entitled causes contained these averments:

"Your orator respectfully shows to the court that the existing laws of the state of Kentucky do not provide for taxing the shares of your orator as permitted by the act of congress, but attempt to subject to taxation its franchise granted by the congress of the United States and its other intangible property, such as its surplus, undivided profits, and investments, without lawful right to do so, and contrary to the act of congress in such cases made and provided. Your orator has never consented to this method of taxation, but has always protested against the same as illegal and contrary to the act of congress. And your orator respectfully submits that said statute of the state of Kentucky is repugnant to the act of congress in such cases made and provided, and, because of said repugnancy, is void and of no binding force as against your orator. Your orator further shows and submits to the court that by reason of the formal contract entered into by all the other banks and trust companies in the city of Louisville, and by reason of the former adjudication in favor of said banks and trust companies establishing the validity of said contract, they will escape local taxation, except on the houses owned by them respectively, in which they respectively do business; and your orator, coming, as it does, into direct competition with said institutions, will be driven out of business if subjected to local taxation; wherefore it respectfully insists it is protected by the acts of congress against such unjust discrimination."

The first question is whether the revenue act of November, 1892, taxes the national banks in a way inconsistent with the permission given by congress.

Section 5219 of the Revised Statutes of the United States is as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county or municipal taxes, to the same extent according to its value, as other real property is taxed."

The state derives its power to tax national banks from this section. The question is whether the provision for taxation of banks under the revenue act of November, 1892, is a violation of this section. The provisions of that act are that all banks shall be taxed upon their real property and personal property, and also taxed upon their franchises to be assessed by subtracting the value of the tangible property from the value of the capital stock of the company. It is argued that the state has no right to tax the franchises conferred by the government of the United States. But it has been

decided in the cases of Henderson Bridge Co. v. Kentucky, 166 U. S. 150, 17 Sup. Ct. 532, and Adams Exp. Co. v. Kentucky, 166 U. S. 171, 17 Sup. Ct. 527, that the word "franchise," in the revenue act of 1892 was not employed in a technical sense, and that the legislative intention was plain that the entire property, tangible and intangible, of all foreign and domestic corporations, and all foreign and domestic companies, possessing no franchise, should be valued as an entirety, that the value of the tangible property should be deducted, and that the value of the intangible property thus ascertained should be taxed under these provisions. It will be seen, therefore, that the taxation upon all banks is nothing but a tax upon the value of its capital stock. There is no discrimination whatever against national banks in favor of state banks, because they are all subject to the same rule of taxation.

The supreme court of the United States has given section 5219 a very liberal construction in sustaining state taxation of national banks if not inconsistent with the purpose of congress to prevent a discrimination in favor of state banks as against national banks. Mr. Justice Miller, in delivering the opinion of the court in the case of Davenport Nat. Bank v. Davenport Board of Equalization, 123 U. S. 83, 8 Sup. Ct. 73, said:

"It has never been held by this court that the states should abandon systems of taxation of their own banks, or of money in the hands of their other corporations, which they may think the most wise and efficient modes of taxing their own corporate organizations, in order to make that taxation conform to the system of taxing the national banks upon the shares of their stock in the hands of their owners. All that has ever been held to be necessary is that the system of state taxation of its own citizens, of its own banks, and of its own corporations shall not work a discrimination unfavorable to the holders of the shares of the national banks. Nor does the act of congress require anything more than this. Neither its language nor its purpose can be construed to go any further. Within these limits, the manner of assessing and collecting all taxes by the states is uncontrolled by the act of congress."

See, also, Mercantile Bank v. City of New York, 121 U. S. 138, 7 Sup. Ct. 826, and Bank of Redemption v. Boston, 125 U. S. 60, 8 Sup. Ct. 772; Palmer v. McMahon, 133 U. S. 660, 10 Sup. Ct. 324.

It is contended, however, that the definition given to the term "capital stock," used in the revenue act of 1892, includes more than the sum of the values of the shares of the capital stock of a corporation. It is true that in the case referred to (Henderson Bridge Co. v. Com., 31 S. W. 486) the court of appeals of Kentucky held that it was proper for the board of valuation and assessment to fix a valuation of the capital stock of the Henderson Bridge Company at more than the market value of the sum of the shares of the capital stock. In that company the shares of capital stock aggregated $1,000,000, the market value of which was 90 cents on the dollar. It had a mortgage upon its property to secure a bonded indebtedness of $2,000,000. In reaching the amount of the capital stock of the bridge company, the board added the market value of the shares of the capital stock to the market value of the mortgage bonds, taking it for granted that that would show the real amount of property, tangible and intangible,

owned by the company. This mode of assessing the capital stock was held to be proper under the law. In such a case, of course, the assessment for taxation would be more than the value of the shares of the capital stock. There could be no such result, however, in the application of the law to national banks, because they are not permitted to issue bonds, and do not hold property under mortgage. It is not averred in the bill, and it does not appear, that the assessment of valuation for taxation against these complainant banks exceeds the market value of their shares of capital stock. However the law may operate, therefore, upon that class of corporations which have bonded indebtedness, it certainly does not in the case of the national banks tax anything more than the equivalent in value of the shares of the capital stock. If it does so, there ought to be some averment to show this. Supervisors v. Stanley, 105 U. S. 311. The bill contains no such statement.

Another objection to the operation of the revenue act upon the complainants is that certain of the state banks and national banks are now, by reason of the previous litigation, enabled to escape all taxation except that provided under the Hewitt act, and that this is a discrimination against them, in violation of section 5219, above quoted.

In Lionberger v. Rouse, 9 Wall. 468, the fact that a state could not collect a tax past a certain amount in the two banks of issue, which it had at that time, was held no bar to the collection of the tax on the shares of the national banks for a greater amount. In this case Mr. Justice Davis, who delivered the opinion of the court, concluded as follows:

"Without pursuing the subject further, it is enough to say, in our opinion, congress meant no more by the second limitation in the proviso to the forty-first section of the national banking act than to require of each state, as a condition to the exercise of the power to tax the shares in national banks, that it should, as far as it had the capacity, tax in like manner the shares of banks of issue of its own creation."

In the former litigation certain banks have been declared to be free from taxation by reason of a contract of exemption. By subsequent decisions in the same court, if that be a material question in that court, the former ruling was declared erroneous. But, by the doctrine of res judicata, the particular banks engaged in the prior litigation are able to rely upon it as a bar to the enforcement of the law of 1892. That law, by its terms, applied to all banks equally. In so far as the state has had the power to do so, therefore, it has made the taxation of all banks equal. We do not think that the exceptions to the operation of the law, produced by the accident of litigation, can make the discrimination arising between the parties to the litigation and those who were not parties,—a discrimination within the inhibition of section 5219 of the national banking act. The motions for preliminary injunction will be denied, the demurrers to the bills will be sustained, and the bills dismissed.