## Commonwealth, By Anderson, Revenue Agent v. Southern Pacific Company.

(Decided October 18, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

## Commonwealth, By Hopkins, Revenue Agent v. Southern Pacific Company.

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Taxation—Assessment of Intangible Property—Assessment of Freight Cars—Objection to Statute—Construction.—In an action to assess the intangible properties of appellee, and 100 of its freight cars, the proceedings were dismissed by the circuit court. Upon appeal by the Commonwealth, it is insisted that appellee does not fall within the character of corporations named in section 4077 and the following sections of the Ky. Stats., and that the amendment of 1906 to section 4081 is unconstitutional; and that the valuation fixed upon the property is so low as to amount to a fraud, and to be in fact no assessment: Held, That the precise question was before this court in Southern Pacific v. Commonwealth, 134 Ky., 410, where it was held that the State Board of Valuation and Assessment was the proper authority to make the assessment, and that in the absence of a showing of fraud or mistake its action was final and conclusive.

2. By section 182 of the Constitution, the right of classification is open to the General Assembly in formulating a method of taxation and assessment of railroad properties, and this at once answers the objection that the amendment of 1906 conflicts with the prohibition of subsection 15 of section 59 of the Constitution against the enactment of special legislation regulating the levy, assessment and collection of taxes.

3. Same.—As to the assessment of the freight cars, the record shows no deduction was made in the value of the franchise of any of the tangible property, and it results, therefore, that the State has suffered nothing because of the failure to assess them, for the reason that to the extent of their value, the franchise assessment is larger than it would have otherwise been.

O'REAR & WILLIAMS and M. J. HOLT for appellant.

HUMPHREY, MIDDLETON & HUMPHREY for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

The appeals, presenting substantially the same questions, are considered together.

The effort by the Commonwealth in the cases is to assess for taxation for the years 1909 and 1910 the entire intangible properties of the Southern Pacific Company, and 100 freight cars, the property of the defendant company, alleged to have been in Kentucky on the assessing dates. The lower court upon trial dismissed the proceedings, and the Commonwealth appeals.

It is admitted in the record that the appellee company made report to the State Board of Valuation and Assessment for the years named, and that the board thereupon assessed its franchise property, upon which assessment the company duly paid the taxes, all as provided in sections 4077, et seq. of the Kentucky Statutes. It is insisted, however, (a) that the Southern Pacific Company does not fall within the character of corporations the property of which is assessable under the sections named; (b) that the amendment of 1906 to section 4081 of the statutes, under which the board acted, is unconstitutional; and (c) that even if the properties of the company be assessable under the statutes named, the valuation fixed upon the properties of the company by the board was so low as compared with their real values as to be a fraud upon the Commonwealth, and to be in fact no assessment.

The first position taken is taken upon the ground that as the Southern Pacific Company owns or operates no railroad in Kentucky, its franchise, insofar as Kentucky is concerned, is merely a franchise to exist, "to be," as the brief-writer puts it, and not a franchise "to do," to engage in Kentucky in the performance of any public service, or to exercise in Kentucky any special or exclu-

sive privilege or franchise not allowed by law to natural persons; and that, therefore, the company does not fall within the character of corporations now commonly known in taxing parlance as "franchise" corporations to be taxed under the sections named. If this be true, it follows that the State board's assessment would be no assessment. But the argument fails to include a consideration of the entire terms of section 4077. The section first provides that "every railway company or corporation, and guaranty and security company, gas company, water company, etc., etc., and every other like company, corporation or association, *also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons or performing any public service*" shall pay a franchise tax. In the case of Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky., 165, the statement is explicity made that the words we have italicized were added for the purpose of including such corporations as were not strictly *ejusdem generis* with the specific kinds of corporations first enumerated, but which might exercise special privileges or perform some public service. The generality of corporations of unnamed kinds engaged in public service work or exercising some special or exclusive privilege which a natural person cannot exercise, are by the statute made "franchise" corporations, to be assessed by the State board. The generality of corporations not doing public service work, or exercising special privileges, are non-franchise corporations, the property of which is assessed in the way usual to natural citizens, or to the particular class of general corporations with which they are *ejusdem generis.* But a railway company is to be assessed by the State board, for the statute so says. The statute does not make the method of assessment, the right and duty of the State board to make assessment, of railway corporation properties and of the other kinds of corporations specifically named in section 4077, together with all other *ejusdem generis,* depend upon whether they at the time of the assessment are actually engaged in performing some public service work or enjoying some special privilege not accorded a natural person, but upon the fact that the legislative will which enacted the statute has said that such particular corporations should be so assessed, and so ended the

matter. But the question need not be further discussed. It was settled in Southern Pacific Co. v. Commonwealth, 134 Ky., 410, adverse to the Commonwealth's argument here. And again, when the direct question was brought here upon the argument now made here, in Commonwealth v. Southern Pacific Co., 144 Ky., 803, we said:

"Though the demurrer admits that, for the year in question, the Southern Pacific Company made its report to the Auditor of Public Accounts and the State Board of Valuation and Assessment as required by the statute, and that board assessed that company's franchise at $1,000,000, it is insisted for appellant that the statute then in force did not authorize the State Board of Valuation and Assessment to make the assessment, because the Southern Pacific Company had no line in this State. This precise question, however, was before us in the recent case of Southern Pacific Co. v. Commonwealth, 134 Ky., 410. It was there held that the State Board of Valuation and Assessment was the proper authority to make the assessment, and in the absence of a showing of a fraud or mistake its action was final and conclusive."

But it is argued dehors the record that the appellee company will, when first it finds the assessment made by the State board to be unsatisfactory to it, itself defend against the right of the State board to assess its properties. If we were to permit ourselves to be influenced by the argument *ad hominem* to consider the suggestion, a sufficient answer is to be found in the fact that in this action the appellee company here expressly denies that the sections named are unconstitutional and invokes and, therefore, binds itself by and to the method of the assessment of its properties provided by these statutes. Upon this phase of the discussion the appellant takes the position that the appellee company is a mere holding company, operating no railroad, engaged in no railroad business, but exercising its corporate functions purely and solely as an owner of stocks and bonds; and that these stocks and bonds are the subject of assessment not otherwise than as if the stocks and bonds were owned by an individual or natural person. Again attention is called to the foregoing decisions of the court holding otherwise. But if we consider the question anew upon the record here we can reach no different conclusion. The statement or petition here charges that the South-

ern Pacific Company "controls through ownership of stock or *by lease* a large system of railroads extending from San Francisco to New Orleans, the entire system embracing nine thousand, two hundred and sixty miles of railroad;" and the financial and operating statement incorporated in the petition or statement embraces this item: "Average miles of road *operated* 9,024.59." If it controls railroads by lease, and if it operates a system of nine thousand miles, it can through no sort of alluring argument be regarded as a mere holding company, owning stocks and bonds and exercising none of the functions of railway companies generally.

Nor is there much of difficulty about the constitutionality of the amendment of 1906 to section 4081 of the statutes. That statute reads as follows, the amendment named being in italics:

"If the corporation organized under the laws of this State, or of some other State government, be a railroad, telegraph, telephone, express, sleeping, dining, palace or chair car company or a corporation performing any other public service, the lines of which extend beyond the limits of the State, the said board will fix the value of the capital stock as hereinbefore provided, and that proportion of the value of the capital stock which the length of the lines operated, owned, leased, or controlled in this State, bears to the total length of the lines owned, leased or controlled in this State and elsewhere, shall be considered in fixing the value of the corporate franchise of such corporation liable for taxation in this State; and such corporate franchise shall be liable for taxation in each county, incorporated city, town or district through or into which such lines pass, or are operated, in the some proportion that the length of the line in such county, city, town or district bears to the whole length of lines in this State; *but if any such railroad or other corporation organized under the laws of this State have all of its lines outside of this State, the said board shall fix the value of its entire capital stock as hereinbefore provided, and apportion to this State for taxation therein the proper proportion and not less than one per cent of its said capital stock, and the amount so apportioned shall be the value of its intangible property, including its corporate franchise, stocks, bonds, securities and choses in action, subject to taxation in this State and in*

*the county, city, town and district where its principal place of business in this State may be located."*

Prior to the enactment of the amendment the appellee company was of substantially the same character as it is now. Then as now no part of its lines lay in Kentucky. The company then insisted that it was not liable to any tax under section 4081; but the State board assessed it, the company finally acquiescing in the value fixed. Later, an action was instituted by the Attorney General of the Commonwealth in which it was charged that the valuation made by the State board was unauthorized, illegal, fraudulent and void. It is true that not the right of the board to assess, but the valuation fixed in the assessment, was the object of the attack. But in disposing of the case here, construing the statute as it then stood, we upheld the assessment made by the State board, and in the course of the opinion said that the statute did not provide that the proportion between the lines in this State and the lines in and out of this State, should be conclusive, but only that it should be considered by the board. Southern Pacific Co. v. Commonwealth, 134 Ky., 410. The italicized amendment, adopted before the decision of that case, but after the facts of it arose, is a statutory declaration of the very spirit of that case. We held in effect that the State board might do before the amendment the identical thing for the doing of which the amendment made provision. The only substantial change in the amendment affected not the method of assessment, but the valuation; and that only to the extent of declaring that as to companies having only foreign lines the franchise valuation should be not less than one per centum of its capital stock.

But notwithstanding this similarity in the express terms of the amending statute and the judicial construction of the section before amendment, it is yet argued that the amendment contravenes certain sections of our State Constitution.

As opening the discussion, attention is invited to section 182 of the Constitution, which provides: "Nothing in this Constitution shall be construed to prevent the General Assembly from providing by law how railroads and railroad property shall be assessed, and how taxes thereon shall be collected." The right of classification, therefore, is open to the General Assembly insofar as

it is exercised in formulating a method of taxation and assessment of railroad properties different from that which it may apply to other species of property. Thus is answered at once the constitutional objection that the statute in question conflicts with the prohibition in subsection 15 of section 59 of the Constitution against the enactment of special legislation regulating the levy, assessment or collection of taxes.

The next constitutional objection to the statute to be considered is that it exempts from taxation the intangible property of the corporation, against the demand of section 172 of the Constitution that all property shall be assessed at its fair cash value. The question of valuation will be considered later. Here we have to do only with the question of exemption. That the method of taxation provided by the sections named does in fact embrace the intangible properties of the corporation is not an open question in Kentucky. Among the properties sought to be assessed against the Louisville & Nashville Railroad Company in the case of the Commonwealth against it, decided here on October 16, 1912, were stocks, bonds, cash and various other species of intangible property. That company, like this, had made report to and been assessed by the State board. The opinion in the Louisville & Nashville case sets out at length the section of the statutes in question. It then quotes as follows from the case of Henderson Bridge Co. v. Commonwealth, 99 Ky., 623:

"In the light of the foregoing provisions of the Constitution, and of the act of the Legislature, and of the instructions given to the Board of Valuation and Assessment and of the sworn statement demanded of the president of the company, on which, with other testimony to make this valuation, we are constrained to say that by this term capital stock the Legislature meant to include the entire property, real and personal, tangible and intangible, all assets on hand, and its franchise as well, and that when so embraced and construed and valued as an entirety, then to take off the tangible property already assessed, and that the net balance will show and shall be the value of the franchise to be taxed under section 4077."

The opinion in the recent case then continues:

"And in the recent case of Commonwealth, By, &c. v. L. & N. R. R. Co., 142 Ky., 663, where it was sought

to assess as omitted property the same property involved in this action, though for a different year, the court, in discussing the foregoing provisions of the statute, with reference to the taxation of franchises, said:

" 'From the foregoing statutes it is apparent that it was the legislative intent that all property, of every kind and description, owned by a railroad company in this State, should be taxed by one or the other of these boards. The real estate is clearly to be taxed by the Railroad Commission, and the intangible property by the Board of Valuation and Assessment; but inasmuch as the Board of Valuation and Assessment, in arriving at the value of the franchise, must deduct from the total value fixed by it upon the capital stock of the company the assessed value of its tangible property, as found by the Railroad Commission, it is readily seen that the assessment is at least made by the Board of Valuation and Assessment. The information which the railroad is required to give should be ample to enable this board to arrive at a fair and just valuation of the franchise; but if the information given in such report is, in the opinion of the Board of Valuation and Assessment, not sufficient, the statute authorizes it to receive other information in order that it may arrive at a fair valuation.

" 'The answer in this case alleges that the report required by the statute was made, and the demurrer admits that it was. It shows, after giving in detail certain data required by the act, the value of all other assets. This item, "all other assets," would necessarily include every item set out in the statement which appellant seeks to have listed as omitted property.' "

The opinion then concludes that in a proceeding to assess such property as omitted it must affirmatively appear that the report was not made as required by section 4078, or that if made, it was not made in accordance with the statute, and did not include the property sought to be assessed. The records here contain certain stipulations by the litigants that the company's reports to the Auditor for the years in question, made under the statutory sections named, stated truly its stocks, bonds, securities and choses in action; that the State board, upon these reports, found the value of the company's intangible property, franchise, foreign stocks, bonds, securities and choses in action; and that the board then fixed for one year one per centum and for the other year one

and one-third per centum of the value so ascertained as the proportion of the total value taxable in Kentucky. In the cases at bar, therefore, it is settled by admission that the intangible properties were assessed. And under the authorities, supra, it is settled that the franchise assessment is meant to cover among other assets all the intangible property of the concern. The case of Cumberland Telegraph & Telephone Co. v. Hopkins, 121 Ky., 850, not heretofore cited, is an additional authority sustaining our position. A good many attractive theories are presented by counsel as to how these intangible properties may escape taxation. The standard of constitutionality within the intent of section 172 is that some means be provided for taxing all property not exempt. That the statutes in question present the means of taxing these intangible properties there is no doubt. That they are consistent with the requisitions of section 172 of the Constitution is equally, therefore, beyond doubt. Possible delinquencies or concealments by the companies reporting, possible undervaluations by such companies or the taxing authorities, possible inequalities and injustices between the several classes of taxpayers and taxpaying properties, are inherent in all systems of taxation which ever were devised by the diligent thought and care of the legislation of the past, or which will be devised in the future by legislation enlightened by observation of the frailties of former schemes, or plans or methods of taxation. Our conclusions must be reached in the light of our current, practical, every-day observation, and our deductions from the history of past results attained from the many taxing plans of the past. Doubtless when, if ever, some student of political economy invents some taxing system under which no property can evade taxation, under which the subtle and the miserly cannot escape their justly proportioned contribution to the maintenance of our government, that perfect plan will be adopted. Then it may be well said that any other scheme falling short of perfection, is not a constitutional scheme within section 172 of the Constitution. As it is, the sections named do afford a practical method of assessing these intangible properties at the values demanded by the equality provisions of our Constitution. No more need be said about the subject.

Section 174 of the Constitution, providing that all property, of natural persons or corporate, shall be taxed

in proportion to its value, is next said to invalidate the taxing scheme under consideration; because, it is said, the intangible properties assessed under the sections named, are not assessed in proportion to their values. If they are not, it is because those invested with the execution of the law fall short in the discharge of their duties. The statutes make no provision for any unequal or undervalued assessments. They exempt no property. They afford a full and possible method for ascertaining and fixing the value of such properties and making assessments thereon. The State board may have and act upon one idea of values with which the mind of another finds itself unable to accord. The minds of our revenue agents are trained by long and perhaps just observation to believe that but little if any property is sufficiently taxed as measured by the laws regulating the subject. However well-founded may be the belief that such properties in the past have not borne their just burden under this system of taxation, however well-based the apprehension that a like injustice may occur in the future, it yet remains that such inequality, if any, results not because the method of assessment does not provide the means of an adequate assessment, but because the means provided have not been exercised by those upon whom the law imposes the duty of assessment under the adequate law. A failure of duty under a constitutional law does not render the law unconstitutional.

At this place it may be well to notice another objection urged to section 4081 as amended, i. e., that it requires the State board to find the value of the franchises of domestic railroad corporations having only extra-territorial lines, to be one per centum of the value of the capital stock. Such is not the provision. The provision is that a corporation organized under and drawing its rights from the organic corporation laws of our Commonwealth, but affording our citizens none of the benefits of railway communication and transportation, shall pay a franchise tax of not less than one per centum of its capital stock. The State board is not limited to one per centum of the capital stock. It may go as far above and beyond that value as a just and fair ascertainment of franchise values under the general provisions of the section may authorize it to go. Upon the other side of the question, it cannot be said upon mere speculation that the arbitrary fixation of one per centum of the capi-

tal stock of such corporations as its minimum franchise value is so high as to render the amendment unconstitutional. It may be that somewhere and at some time some such corporation may take this position. If such a situation should ever arise, the corporation raising the question will need to present a state of fact for the guidance of the court in passing upon the constitutionality of the law as regards the arbitrary minimum valuation named. Speaking for ourselves, our natural inclination is to believe that this arbitrary and, relatively speaking, infinitesimal valuation of one per centum will never be too high; and we cannot permit the statute to fall upon the assumption that such arbitrary fixation ever will be too high. The constitutionality of laws must be tested in many cases, not by the very words of the statute, but by the practical operation of the laws and by their practical results as developed by past experience or practical future certainties. The amendment certainly provides no proportion of valuation which may be too low; for the proportion may ascend to one hundred per centum. If the statute ever be attacked because the arbitrary minimum proportion is too high, no court can declare the statute unconstitutional until some proof has been adduced showing this meager arbitrary valuation standard to be too high.

Upon (c). In one of the cases it is stipulated that the State board found the entire and true values of these properties to be $272,712,500, and apportioned one per centum thereof as the franchise valuation assessable in Kentucky. In the other, it is agreed that the State board found the entire and true values of these properties to be $363,491,583, and apportioned one and one-third per centum thereof as the franchise valuation assessable in Kentucky. The argument then is that the valuation fixed is such a gross undervaluation as to render the assessment void. The agreed statement of fact, however, in the one case is that the value fixed by the State board of $272,712,500 was the true value; and in the other case that the properties valued by the board at $363,491,583 were worth exceeding $200,000,000. The question argued, therefore, is not one of undervaluation by the board of the entire properties. but whether the per centum proportioned to Kentucky be so gross an undervaluation as to be in fact no assessment. The assessment made was an assessment. In the case of Coul-

ter, Auditor v. Louisville Bridge Co., 114 Ky., 42, we said: "When the proper assessing officers, within the time and substantially in the manner prescribed by statute, have acted in considering and fixing the valuation upon property liable to assessment for taxation, and no relief has been obtained within the time allowed by statute for correcting their action, if erroneous, that action is final." The case of Southern Pacific Co. v. Commonwealth, 134 Ky., 410, was decided upon this principle. In that case the total valuation of the properties was over $400,000,000. The State board fixed the franchise valuation in Kentucky at $1,000,000. The board's action was held to be final. If it was there, it must be here; for the franchise valuations here are in the one case over two and one-half times, and in the other over four and one-half times, as large, and in both cases upon a less total valuation than in the case cited.

The general question of the constitutionality of the entire methods of assessment of property under the statutes under discussion has been settled in Paducah Street Railway Co. v. County of McCracken, et al., 105 Ky., 472, Southern Ry. Co. v. Coulter, Auditor, 113 Ky., 657, and other cases. The amendment of 1906, is, as we have indicated, in line with and not a departure from the method existing when those cases were written.

Another question in the record is the alleged liability of the appellee company for the payment of an inheritance tax due from the estates of decedents who owned shares of its stock; as is provided by sections 4281a-4281s of the Kentucky Statutes. It was not alleged or shown that any of such decedents owned land in, or resided in, Jefferson County at the time of the death. The trial court, therefore, properly held itself without jurisdiction. Commonwealth v. Cumberland Telephone & Telegraph Co., 146 Ky., 142.

It is admitted that the tangible property, the freight cars, were not assessed or tax paid in either of the years. The defendant company denied, upon the want of knowledge or information, that there were any of its cars in Kentucky. It seeks to justify the form of its denial by stating in its brief that, operating no lines in Kentucky, its cars, if in the State at all, had come from here, there and yonder upon the lines of other roads; that their presence at any given point in the Union was but ephemeral, and that it could not know their whereabouts.

Waiving a consideration of whether this state of fact would justify the form of pleading adopted, it suffices to say that no such state of fact was presented in its answer. The Commonwealth did not question in the trial court the sufficiency of the denial, one of the methods of denial permitted by the Civil Code. The question, however, is a moot one about which we need not concern ourselves. The record discloses that in the valuation of the franchise no deduction was made of the value of any of the tangible property; nor indeed, as above stated, was any assessment of the tangible property made by the railroad commission or any tax paid upon it. Had such an assessment of the freight cars, the tangible property, been made, the State board would have needed to deduct this value of the tangible property from the franchise valuation fixed by it. It results, therefore, that the State has suffered nothing because of the failure to assess and tax-pay the freight cars. To the extent of their value, the franchise assessment is larger than otherwise it would have been.

For the reasons given the judgments of the trial court are affirmed.

Whole court save Judge Lassing sitting.