## Kentucky Heating Company, et al. v. City of Louisville.

(Decided February 20, 1917.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Statutes—Section 2984a of the Kentucky Statutes Constitutional.—Section 2984a of the Kentucky Statutes, authorizing the assessment for city taxation by the city assessor of the franchise of certain named companies, is not unconstitutional.

2. Statutes—Constitutional Law—Persons Who May Not Complain of Invalidity of Statutes.—No person will be heard to question the validity of a statute unless his rights are affected by that part claimed to be invalid.

3. Constitutional Law—Local and Special Legislation—Legislation for Cities.—The legislature may enact legislation regulating the municipal affairs of cities and towns, although such legislation may modify or repeal general laws that would have been in force in the cities and towns except for the enactment of this special legislation.

4. Constitutional Law—Local and Special Legislation—Legislation for Cities—When Invalid.—While the legislature has the right to legislate specially for cities and towns in matters relating to municipal affairs, it has no power to enact special legislation for cities in contravention to the constitution, under the pretense that it concerned only the internal affairs of cities, when the real purpose was not to regulate or control at all municipal affairs, but to exempt the cities from general laws.

5. Constitutional Law—Unconstitutionality of Amendatory Act—Effect of.—If an amendatory act is held to be unconstitutional, its invalidity will not affect the validity of the act it purported to amend.

6. Taxation—Erroneous Assessment by Assessor—Effect of When Appeal Taken to Supervising Board.—Where the statute allows an appeal from the assessment of the assessor to a board, which may correct errors in his assessment, mistakes made by the assessor are not material when the tax sought to be collected is based on the assessment made by the board to which an appeal was taken.

7. Taxation—Assessment—Remedy of Complaining Taxpayer—Appeal to Supervising Board.—Where an appeal to a supervising board is

allowed the taxpayer from the assessment made by the assessor, he must avail himself of the remedy of appeal, and the courts will not review the action of the assessor unless the taxpayer has been denied the right to prosecute an appeal.

8. Taxation—Assessment—Right of Courts to Review and Correct.— Although a statute may provide that the action of an assessing board "shall be final," the court, in a suit to enforce the collection of the tax, or in a suit to enjoin its collection, may review and correct the assessment when it clearly appears that the board acted corruptly or fraudulently, or made an assessment so excessive as to amount to spoliation, or by mistake assessed the property in such a manner as to subject it to double taxation.

9. Taxation—Franchise Assessment—When Courts Will Review Action of Board.—If a board having authority to make franchise assessments on reports furnished by corporations, makes an erroneous franchise assessment or fixes an erroneous value on property, due to mistake on the part of the board in applying the law to the facts and figures shown by the report, the court will grant relief, although by the statute the action of the board "shall be final."

10. Taxation—Assessment—When Court Will Not Review or Correct Action of Board.—Where a mistake complained of is a mere error of judgment involving only the correct valuation of the property, the finding of the board will be conclusive.

11. Taxation—Value of Franchise—How Arrived at—Deduction of Value of Tangible Property.—In arriving at the value of the franchise of a corporation there should be deducted from the fair cash value of its capital stock the assessed value of its tangible property. The value of the franchise is the difference between the fair cash value of the capital stock and the assessed value of its tangible property.

12. Taxation—Assessment of Francise—How Value Estimated.—In estimating the value of the capital stock of a corporation the board should take into consideration the entire property of every kind owned by the corporation, and after fixing a value thereon, deduct therefrom the value of the tangible property.

13. Taxation—Franchise Tax Defined.—A franchise tax is a tax upon the intangible property of a corporation, represented by the difference between the value of its capital stock and the assessed value of its tangible property.

14. Taxation—Double Taxation—City Assessment of Corporation.— Where a corporation that is subject to a franchise tax does business in a city and out of a city, the city board of assessment should assess for the benefit of the city only that part of the franchise exercised in the city, otherwise there would be double taxation.

15. Taxation—Reports Made by a Corporation to Assessor—What Should Contain.—Reports made by a corporation to the assessor to enable him to fix the value of its franchise should contain full and truthful information concerning all matters inquired of in the report.

16. Taxation—Duty of Taxpayer on Appeal to Board of Equalization.—
Where a taxpayer appeals to the Board of Equalization from an
alleged excessive assessment made by the assessor, the burden is
on him to point out in what particulars the assessor committed
error, and he must give to the board full and truthful information
touching all matters that will enable it to arrive at a correct
valuation of the property.

17. Taxation—Board of Equalization—Duty of to Taxpayer.—The
board of equalization should also on request furnish to the taxpayer
the facts and figures on which it proposes to estimate the value
of the franchise and information as to the method employed by
which it will arrive at its conclusions.

18. Taxation—Penalties.—Section 2984a provides that franchise tax
bills shall be subject to the same discounts and penalties as other
tax bills due the city, and whenever the general revenue laws of
the city change the discounts and penalties, the new law becomes
applicable to francise taxes.

MATT O'DOHERTY for appellants.

GEORGE CARY TABB and PENDLETON BECKLEY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this suit by the city of Louisville to collect from
the Kentucky Heating Company a franchise tax as-
sessed against it as of September 1, 1912, there was a
judgment in favor of the city for $26,648.95, and from
the judgment the appeal now before us was prosecuted.

The Kentucky Heating Company is a Kentucky cor-
poration, engaged in the principal business of obtaining
and selling natural gas secured from gas fields owned
by it in Meade county, Kentucky, but it also manufac-
tures artificial gas in Hardin county, Kentucky. The
natural gas is conveyed in pipes from the Meade county
fields to the city of Louisville in Jefferson county as is
the artificial gas manufactured conveyed from Hardin
county. It appears from the evidence taken in this case
that it owns eighteen miles of pipe line in Meade county,
three miles in Hardin county, twenty-two miles in Jef-
ferson county, outside of the city, and seventy miles in
the city. There are a few persons in Hardin and Meade
counties to whom it supplies gas, and in Jefferson
county, outside of the city, it receives from patrons an-
nually for gas supplied about fourteen hundred dollars.
But its principal business is confined to supplying gas
to its patrons in the city of Louisville, and it supplies
persons outside of the city more as a favor than as a
matter of business.

The statute, which will be more particularly noticed hereafter, authorizes the imposition of what is commonly called a franchise tax upon corporations engaged in the manufacture and transportation of gas, and also provides that the companies so engaged shall each year make reports to the assessing authorities. In attempted compliance with this statute requiring reports to be made, the heating company, in October, 1912, made its report for the year ending September 1, 1912, to the assessor of the city. This report was verified by Donald McDonald, the president of the company and will later be referred to.

The assessor of the city of Louisville fixed the value of the franchise of the company, as of September 1, 1912, "after deducting the assessed value of all tangible property," at $1,500,000.00. The company deeming this assessment excessive, prosecuted an appeal to the board of equalization of the city, and this board, which has authority to hear evidence offered by the complaining party and increase or decrease assessments made by the assessor, at its meeting held in December, 1912, reduced the assessment to $1,200,000.00, and to recover the taxes due on this revised assessment this suit was brought.

Counsel for the heating company urges two principal grounds for reversal that will be considered in the order named: (a) that the franchise assessment of the heating company for the city of Louisville should have been made by the State Board of Valuation and Assessment and not by the city assessor of Louisville or the board of equalization of the city; (b) that if the assessor had power to make the assessment, he, by mistake or oversight, put an excessive valuation on the franchise, and the board of equalization by mistake or oversight placed an excessive valuation on its franchise.

In sections 4077-4084, inclusive, of the Kentucky Statutes, provision is made for the assessment by the State Board of Valuation and Assessment of the franchise of certain named corporations engaged in business in the state, including corporations doing the business the heating company was carrying on. But in 1898 the legislature adopted an act, that is now section 2984a of the Kentucky Statutes, authorizing the assessment for city taxation by the city assessor of the franchise of certain companies, including those engaged in the busi-

ness the heating company was carrying on. This act, which contained thirteen sections, applied only to cities of the first and second class, the title of it reading, "An act concerning the assessment and valuation of corporate franchises and intangible property in cities of the first and second class." In 1900 the first section only of this act was so amended as to make its provisions embrace and apply to cities of the third class. A few other changes not necessary to notice were also made in this section by the amendment. In 1904, section one of the act was again amended by striking out the words "cities of the second and third class," so as to leave the act applicable only to cities of the first class. The form and substance of these amendatory acts are not objectionable, as it is allowable to amend by its re-enactment and publication one section of an act without reference to the other sections. Board of Penitentiary Comrs. v. Spencer, 159 Ky. 255.

But when the title of the act of 1904 is looked to, some question might be raised as to whether the attempt to amend section one of the act of 1898, as amended by the act of 1900, was effectual, but upon this subject we express no opinion. The question is not here, and even if it should be admitted that the attempted amendment of 1904 was a nullity, the original act, as well as the amendment of 1900, would remain and leave the provisions of the act applicable to cities of the first class. Cities of the first class were not taken, or attempted to be taken, out of the act by either the amendment of 1900 or the amendment of 1904. The act as it now appears in the 1915 edition of the Kentucky Statutes is the act of 1898 as it was amended by the act of 1900, with the exception that the first section of the act as it now appears in the Kentucky Statutes, is a copy of the amendment of section one by the act of 1904, which, as we have said, merely struck out the words "second and third class cities." So that we cannot agree with counsel that all of the act of 1898 (section 2984a) except section one, has been repealed. We think the whole of the act as it now appears in the Kentucky Statutes is in full force and effect, unless it be that the act of 1904 is invalid, and if this were so, the only effect would be, as we have said, to restore the act of 1900 and make the act applicable to cities of the second and third class as well as cities of the first class.

Another objection urged is that this act is special legislation prohibited by section 60 and by subsections 15 and 29 of section 59 of the Constitution. We think it would be a sufficient answer to this argument to say that in Murphy v. City of Louisville, 114 Ky. 762, the constitutionality of the act of 1898 was directly brought before the court and its validity upheld, and the only substantial difference between the act of 1898 and the present law as it appears in section 2984a of the Kentucky Statutes relates to the classes of cities to which the act applies.

But counsel insists that the objection now urged, that it violates section 59 of the constitution, and subsections 15 and 29 thereof, was not brought to the attention of the court in the Murphy case and, therefore, that opinion should not be held to foreclose an inquiry into the soundness of the argument now for the first time presented. It does not appear that the point now urged was brought to the attention of the court in the Murphy case and so we will consider it.

Section 59 of the constitution provides that: "The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely:"    .    .    .    . (Subsection 15): "To authorize or to regulate the levy, the assessment or the collection of taxes, or to give any indulgence or discharge to any assessor or collector of taxes, or to his sureties."    .    .    .    . (Subsection 29): "In all other cases where a general law can be made applicable, no special law shall be enacted."

Section 60 of the constitution also provides, in part, that: "The General Assembly shall not indirectly enact any special or local act by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district or county." And it is said that the legislation here drawn in question was an attempt on the part of the legislature in violation of the provisions quoted to repeal, by a special or local act, the general law conferring on the State Board of Valuation and Assessment the power to assess the franchises of corporations such as the heating company and to confer this authority by a local act on the city assessor.

It is true that if section 2984a of the statutes, giving to the city assessor authority to assess the franchises of certain corporations, such as the heating company, had

not been enacted, the franchises of all these corpora-
tions could and would have been assessed by the State
Board of Valuation and Assessment under the general
law giving it authority to assess such franchises. But
the constitution erected certain classes of cities and
gave to the legislature authority to deal with these
classes in so far as their municipal affairs were con-
cerned by legislation applicable to these classes alone.
And this legislative power has been recognized in great
numbers of cases in which special laws applicable to the
municipal affairs of cities alone have been upheld al-
though these special laws were in direct conflict with
or modified in material respects general laws that would
have been in force in the cities except for the enactment
of this special legislation. The power of the legislature
to do this necessarily follows from the constitutional
classification of cities and towns. The very purpose of
putting them in classes was to enable the legislature to
deal with the municipal affairs of each class in a manner
separate and distinct from the legislation applied to
other classes and from the legislation enacted for the
state-at-large.

But in some instances the legislature has attempted
to repeal or modify general laws by special acts appli-
cable to cities that did not concern the municipal affairs
of the city, and in these instances the legislation was
held invalid, not because the legislature did not have the
right to legislate specially for cities and towns in mat-
ters relating to municipal affairs, but because the legis-
lation designated as applicable to cities only was an
attempt to enact special legislation, in contravention of
the constitution, under the pretense that it concerned
only the internal affairs of cities, when the real pur-
pose was not to regulate or control at all municipal
affairs but to exempt the cities from general laws. Illus-
trations of this class of legislation are to be found in
Droege v. McInerney, 120 Ky. 796; Columbia Trust Co.
v. Lincoln Institute, 138 Ky. 804; James v. Barry, 138
Ky. 656.

But the legislation authorizing the city assessor of
certain cities to assess the franchise of designated cor-
porations for taxation for municipal purposes plainly
relates only to the municipal affairs of the city. The
assessment for city purposes of the franchise of a cor-
poration is clearly as much a municipal function as the

assessment of any other class of property in the city, and there can be no doubt that the legislature had the power under the constitution to confer on the assessing authorities of the cities in any one or more classes the right to assess for taxation for municipal purposes the franchise of corporations doing business in the city. Possibly it may not have been a wise thing for the legislature to take away from the state board the right to assess the franchise of corporations like the heating company for municipal purposes as well as for state and county purposes, but this is a matter that addresses itself to the legislative department of the state.

A further objection urged to this legislation is that it fails to provide a rule by which the extent or proportion of the franchise of a corporation exercised in several taxing districts shall be ascertained and determined in each district so that the part so assessed shall not exceed the value of the whole. But we shall not extend this opinion in answering, as we might do, this and other related constitutional objections urged against the statute, because the heating company is not in a position to raise the question as to the constitutionality of the legislation on the ground mentioned, as it did not report to the assessor or the board of equalization, any lines owned, leased, operated or controlled by it outside the city or any franchse exercised by it outside the city.

It has been settled by numerous decisions of this court that no person will be heard to question the validity of a statute unless his rights are affected by that part claimed to be invalid. Commonwealth v. Goldburg, 167 Ky. 96; Burnside v. Lincoln County Court, 86 Ky. 423; Marshall v. Donovan, 10 Bush 681.

The company may have and doubtless did furnish to the State Board of Valuation and Assessment a report showing that it had a franchise subject to assessment in the counties of Hardin and Meade, and in Jefferson county outside of the city, but we are not here concerned with the reports made by this company to the State Board of Valuation and Assessment, or the action taken by this board.

The next ground urged for reversal is that the provisions of section 2984a were not followed by the assessor in making the assessment, and that both the assessor and the board of equalization by mistake and oversight on the part of each, fixed an excessive value

on the franchise. The mistake and oversight said to have been so made grew out of the fact, as insisted by counsel, that both the assessor and the board of equalization assessed as taxable in the city of Louisville the whole franchise exercised by the company in the conduct of all its business, including that part of its franchise exercised in Hardin and Meade counties and in Jefferson county outside of the city, and the further fact that these authorities failed to deduct the value of its tangible property from the value of the capital stock in fixing the value of the franchise. .

We might rest our answer to so much of this argument as relates to the assessment of the franchise said to have been exercised by the company outside of the city on what we have said touching the failure, of the company to report any lines or franchise outside of the city. But as the alleged failure to deduct the value of the tangible property must be considered, we will treat both questions as open for hearing and dispose of them together.

So far as the mistake alleged to have been made by the city assessor is concerned, we may dispose of it with the comment that the heating company appealed from the assessment made by the assessor to the board of equalization, and it is upon the reduced assessment made by the board of equalization that the tax here in question was sought to be collected. The statute, in subsection 7 of section 2984a, gives this right of appeal in providing that: "It shall be the duty of the city assessor, immediately after fixing such value, to notify the corporations, companies or associations of the fact; and all such corporations, companies or associations shall have at least ten days from the time of receiving such notice to go before the board of equalization of the city and ask a change of the valuation, and may introduce evidence, and the chairman of said board is hereby authorized to summon and swear witnesses, and after hearing such evidence, the said board may change the valuation as it may deem proper, and the action of said board shall be final."

It is, therefore, obvious that whether the assessor did or did not make a mistake is not so material, because the city is not attempting to collect taxes on the assessment made by the assessor. The purpose of allowing this appeal was to give complaining taxpayers a remedy

through which they might have an erroneous assessment made by the assessor corrected. And when a taxpayer has availed himself of this remedy, and the board of equalization has acted on his appeal and made for itself an assessment, we cannot perceive how the taxpayer has any right to complain of what the assessor did. It is very plain that, in the absence of fraud, or some obstruction or obstacle that prevented the right to prosecute an appeal to the board of equalization, a taxpayer who was dissatisfied with the assessment made by the assessor, could not in the courts assail his assessment, when he had failed to avail himself of the remedy of appeal to the board of equalization, given to him by the statute.

Looking now to the assessment made by the board of equalization, the question is, can the court in a collateral proceeding like this, review or correct the assessment made by the board upon the allegation that its excessive assessment was due to fraud or mistake or other fault on the part of the board? It will be noticed that the board, although not a court, is a *quasi* judicial body; that is to say, the taxpayer is given a hearing before the board. He may introduce such evidence as he desires and the board, in opposition to his contention, may hear other witnesses, and after hearing the evidence introduced for and against the justness of the assessment, may, in its discretion, either raise or lower the assessment, and its action "shall be final."

Now what meaning should be given to the words of the statute that "the action of said board shall be final?" Does it mean that under no circumstances, and on no state of facts, can its finding be reviewed by the courts?

In the general revenue and taxation laws, in sections 4115-4128, provision is made for the appointment of a board of supervisors in each county, which has authority to review assessments made by the county assessor and increase or decrease the valuation fixed by him, and in these sections provision is made for an appeal by a taxpayer from the action of the board of supervisors to the quarterly court and thence to the higher courts. So that by express statute the action of the board of supervisors is not final, but subject to review by the courts.

In sections 4077-4091 of the general revenue laws, provision is made for the original assessment of the

franchise of certain corporations by the State Board of Valuation and Assessment, and in section 4083 it is provided that this board, after it has fixed the value on the franchise of a corporation, shall give it notice so that it may appear before the board if it so desires and ask that the valuation be lowered. At this hearing, if one is requested, the board has authority to summon and swear witnesses and hear evidence. The statute further provides that "the action of the board shall be final."

It will thus be seen that there are three assessing boards; the board of supervisors for counties, with power to review assessments made by the assessor; the board of equalization for cities, which may review assessments made by the city assessor, and the State Board of Valuation and Assessment, which makes an original and final assessment of the franchises of certain corporations. The statute, as stated, allows an appeal by the taxpayer but not by the Commonwealth from the action of the board of county supervisors, and the right to review on behalf of the taxpayer the action of the County Board of Supervisors, as well as the right to review on behalf of the Commonwealth or the taxpayer the action of the State Board of Valuation and Assessment, has come before us in several cases. We do not, however, recall any case in which the right of the court to review the assessment of a city board whose action "shall be final" has been considered.

The cases, however, presenting the question of the right to review the action of the County Board of Supervisors, as well as the action of the State Board of Valuation and Assessment, and especially those dealing with the finding of the State Board of Valuation and Assessment the action of which "shall be final" afford material assistance in determining our right to review the finding of city boards of equalization, and these cases we will now examine.

Henderson Bridge Co. v. Commonwealth, 99 Ky. 623, was a suit by the Commonwealth to enforce the collection of a franchise tax assessed by the State Board of Valuation and Assessment against the bridge company. The bridge company set up various defenses, and it appears that the circuit court reduced the valuation fixed by the State Board of Valuation and Assessment. From this judgment both parties appealed and the court, in considering the effect of the valuation made by

the state board, which was assailed by the bridge company, although it did not hold that the finding of the board was conclusive and unreviewable by the courts, said: "It should be further said that the findings of this board of valuation and assessment partake of a judicial nature. The defendant had its day in court. It did appear on notice before that board and on evidence made its defense. And on this hearing that board rendered its decision in fixing the value of the franchise of defendant, granted by authority of the state of Kentucky, and this finding, if not conclusive, is entitled to a very high degree of consideration and authority, and it should not be lightly set aside or disregarded by the courts, unless the board proceeded upon an erroneous principle or adopted an improper mode or manner of estimating the value of the franchise, or unless fraud is charged and shown to exist."

In Coulter, Auditor v. Louisville Bridge Co., 114 Ky. 42, the question was the right of the State Board of Valuation and Assessment to review the action of its predecessor in office, and the court said: "We are of opinion and hold that when the proper assessing officers, within the time and substantially in the manner prescribed by the statute, have acted in considering and fixing the valuation upon property liable to assessment for taxation, and no relief has been obtained within the time allowed by statute for correcting their action, if erroneous, that action is final. The judgment and action of the assessor based upon the legal evidence then obtainable and at hand, and as fixed by statute, when recorded in the proper tax lists, in the very nature of things, should be conclusive upon the state, as well as against the taxpayer. Such being the judgment below, it is affirmed."

Southern Pacific Co. v. Commonwealth, 134 Ky. 410, was a suit brought by the Commonwealth against the State Board of Valuation and Assessment in which the Commonwealth charged that the valuation of the franchise of the company made by the board was unauthorized, illegal and fraudulent, and a mandamus was asked requiring the board to reassemble and assess the franchise. In holding that the board when it made the assessment had before it such facts as would enable it to reach a just conclusion, and that there was no evidence of fraud or mistake and, therefore, its finding was con-

clusive, the court refused to grant the relief sought by the Commonwealth, and in the course of the opinion said: "They discharged the duty devolved upon them by the statute as best they could, and, if they erred in judgment, that is no reason why the court should award a mandamus against them requiring them to meet again and make an assessment of the franchise." The court then adopted what was said in Coulter, Auditor v. Louisville Bridge Co., *supra*.

In Commonwealth v. Southern Pacific Co., 144 Ky. 803, and in Commonwealth v. Southern Pacific Co., 150 Ky. 97, it was again said that where the State Board of Valuation and Assessment had authority to make an assessment, its action, in the absence of a showing of fraud or mistake, would be final and conclusive.

In Chicago, St. Louis & N. O. Ry. Co. v. Commonwealth, 115 Ky. 278, the question was the right of the Commonwealth to assess as omitted property the franchise of the railway company, and it was held, following the Coulter and Southern Pacific Co. cases, *supra*, that as the State Board of Valuation and Assessment had fixed a valuation on the franchise of the company, including the items sought to be assessed as omitted property, the action of the board was conclusive.

It will, however, be observed that the precise question we are now considering was not presented in any of these cases, nor was it considered in Citizens' National Bank v. Commonwealth, 118 Ky. 51.

In Owensboro Waterworks Co. v. City of Owensboro, 24 Ky. L. R. 2530, the water company sought to enjoin the collection of a franchise tax assessed against it by the city, and the court in granting the water company partial relief held that there should be but was not deducted from the franchise assessment tangible property of the value of fifteen thousand dollars, as otherwise the water company would be taxed twice on the same property.

In City of Louisville v. Louisville Ry. Co., 118 Ky. 534, suits were brought by the city of Louisville against the railway company to recover certain taxes, including franchise assessments made by the State Board of Valuation and Assessment previous to the act of 1898. The railway company resisted the collection of the taxes upon several grounds, among them that it was being taxed twice on the same property because in making

the franchise assessment the value of its tangible property was not deducted, and the court, without going into the question of the effect of the finding of the State Board of Valuation and Assessment, followed the Owensboro Waterworks case, *supra,* and said that the assessment should be corrected so as to avoid double taxation.

In City of Covington v. Shinkle, 25 Ky. L. R. 73, suit was brought against the city to enjoin the collection of certain taxes upon the ground that the assessment was excessive and oppressive.   Under the statute then in force no appeal was allowed the taxpayer, and the court held that as the statute did not provide for an appeal to the courts from the valuation fixed by the assessor or the board of equalization the collection of the tax would not be enjoined upon the ground that the property had been assessed too high, "unless it be shown that the assessment is so excessive as to import `fraud in the assessor, or amount to spoliation." And the court not finding that either of these grounds of relief existed, dissolved the injunction obtained by Shinkle in the lower court.

In Albin Co. v. City of Louisville, 117 Ky. 895, suit was brought by the city to recover taxes.   The defense of the Albin Company was that the city board of equalization rejected its evidence and arbitrarily fixed the amount of taxes at a sum entirely unsupported by evidence.   In considering this feature of the case, the court said: "It may be that the conclusion reached appeared arbitrary to appellant, when in fact it was not arbitrary, but it admits that its officers appeared before the board and testified.   This board had the right to give such weight to this evidence of appellant's officials as it deemed proper, and if, upon the whole facts and circumstances presented, it fairly concluded the assessment made was proper, then it was the duty of appellant to pay the same.   The statute confides these questions of value to the board of equalization, and the court has no power to review its conclusions in that respect unless the board has proceeded corruptly or fraudulently, which is not alleged or claimed in this case."

Commonwealth v. American Tobacco Co., 29 Ky. L. R. 745, was a proceeding by the Commonwealth against the tobacco company to assess as omitted property a large quantity of tobacco owned by the company.   Evi-

dence was heard in the lower court, but it showed that the property had been assessed too low and not omitted, and from the judgment dismissing the proceeding the Commonwealth appealed. In affirming the judgment, the court said: "It has often been held that the fact that assessing officers assess property too low is no ground for relief in a proceeding such as this, as the court has no supervisory jurisdiction on assessments which have been examined and approved by the boards provided by law."

In Hager, Auditor v. American Surety Co., 121 Ky. 791, it appears that suit was brought by the American Surety Co. in the Franklin Circuit Court against the members of the State Board of Valuation and Assessment for the purpose of preventing it by injunction from making final its tentative assessment. The injunction was granted by the lower court and the state board appealed. In that case the only facts before the court were the report made by the surety company to the Auditor as required by the statute, and the finding of the state board fixing the value of the franchise upon facts stated in the report, and the court in affirming the judgment found that the state board had adopted an erroneous method of fixing the value of the franchise and consequently the surety company was entitled to relief against the action of the board.

In First National Bank v. Hopkinsville, 128 Ky. 383, suit was brought by the First National Bank against the city to recover taxes claimed to have been illegally collected by it. The ground of recovery was that in assessing the value of its shares of stock certain government bonds that were exempt from assessment and taxation were valued, and on this erroneous valuation the tax sought to be recovered was collected; but in holding that the bank could not obtain relief, the court said that it could not assume that the value of these bonds was not properly deducted without going into an investigation of the method employed by the assessing authorities, and this it would not do. It was further said:

"It is simply a case where the claim is made that the assessment is too high because appellant was not given credit in the assessment fixed for the amount of its government bonds. In order to hold that appellant is entitled to recover, we would have to say that the assessment was too high. This we have no power to do

after the assessing officers have passed upon the question, and no complaint has been made to them within the time prescribed by law. . . . . Appellant's property was assessed by the proper officers. The assessment was examined and approved by the boards provided by law. Their action, therefore, is final and conclusive, both upon appellant and appellee. That being the case, the courts have no jurisdiction to supervise and correct the assessment.''

Commonwealth v. Chesapeake & Ohio Ry. Co., 131 Ky. 661, was a proceeding on the part of the Commonwealth to assess property alleged to have been omitted from assessment by the State Board of Valuation and Assessment, but the court said that the board, after acting on reports made to it, made such assessment as it thought proper and that its finding would not be reviewed, as it did not appear that any property was omitted.

In Royer Wheel Co. v. Taylor Co., 104 Ky. 741, the court said: "Mere individual grievances as to assessments, which are founded only upon opinion that the property has been assessed too high, furnish no ground for enjoining the collection of taxes due either the state or the county." To the same effect is Negley v. Henderson Bridge Co., 107 Ky. 414.

In Commonwealth v. Big Sandy Co., 155 Ky. 412, the quarterly court, on a taxpayer's appeal from the assessment of the board of supervisors, reduced the assessment, and from that order the Commonwealth appealed to the circuit court and thence to this court; but the appeal was dismissed upon the ground that the statute, although it gave the taxpayer the right to appeal from the findings of the board of supervisors, did not give the Commonwealth this right.

There is some apparent but not real conflict in these cases on the question whether the courts will undertake to review and if necessary correct an assessment made by the taxing authority whose action by the statute is made final, or from whose action no appeal is allowed by the statute. But this seeming conflict grows out of the fact that the cases came up on different states of fact and presented different questions of law, and so the conclusion reached in each case must be considered in connection with the facts of the case. When so considered the cases are not inharmonious, and from them these

rules may be deduced; when it is clearly made to appear that the assessing board, whether it be the State Board of Valuation and Assessment, or the City Board of Equalization, or the County Board of Supervisors, acts corruptly or fraudulently, or makes an assessment so excessive as that it, amounts to spoliation, or by mistake or oversight assesses property in such a manner as to subject it to double taxation, the courts will in a suit to collect or to enjoin the collection of the tax grant the aggrieved taxpayer adequate relief. And so if these boards, on reports furnished to them by a corporation, and from the facts and figures found in these reports, make an erroneous franchise assessment or fix an erroneous value on property, due to mistake on the part of the board in applying the law to the facts and figures shown by the report, the courts will review the finding and grant the necessary relief. But where the mistake complained of is a mere error of judgment, involving only the correct valuation of the property, as where the taxpayer insists that it should be valued at one sum and the board values it at another and a higher sum, the finding of the board will be conclusive and the court will not undertake to review or correct it unless it is clearly shown that the valuation fixed by the board is so excessive as to amount to spoliation.

Applying now these principles to the facts of this case, it is very clear that the heating company is not entitled to have any relief from the assessment made by the board of equalization. There is no charge of fraud or that the board acted corruptly, nor is there any evidence whatever to support the claim that its assessment was so high as to amount to spoliation. The only ground upon which relief is sought is that the board by mistake or oversight failed to deduct from the value of its capital stock the assessed value of its tangible property, and assessed the entire value of the franchise as being taxable in the city, when a part of it was assessable outside of the city.

There can be, of course, no doubt that in arriving at the value of the franchise of this corporation, there should be deducted from the fair cash value of its capital stock, estimated at the price it would bring at a fair voluntary sale, the assessed value of its tangible property, because the value of the franchise is nothing more than the value of the difference between the fair cash value of the capital stock so estimated and the assessed

value of its tangible property. In other words, in estimating the value of the capital stock the board takes into consideration the entire property, real and personal, tangible and intangible, all assets on hand, and its franchise right as well, and when the value of its capital stock has been so ascertained, the assessed value of the tangible property is deducted therefrom, leaving the remainder as the value of the franchise, which remainder is the intangible property of the corporation, and the so-called franchise tax is nothing more than a tax upon this property. Louisville & Nashville R. R. Co. v. City of Henderson, 154 Ky. 575; Commonwealth v. Louisville Gas Co., 135 Ky. 324; Commonwealth v. Cumberland Tel. Co., 124 Ky. 535; Henderson Bridge Co. v. Commonwealth, 99 Ky. 623; Cumberland Tel. Co. v. Hopkins, 121 Ky. 850.

This being true, it is, of course, plain that if the board of equalization did not deduct the value of the tangible property, which it included in making up the value of the capital stock, from the value of the capital stock after it had been ascertained, the tangible property would be twice assessed; once by the assessor independent of the franchise assessment, and again by the board in arriving at the value of the franchise, and this would certainly result in the double taxation of the tangible property. It is equally plain that, if it appeared that a corporation exercised part of its franchise in a city and part out of a city, the assessor, as well as the city board of equalization, should assess for the benefit of the city only that part of the franchise exercised in the city. Therefore, if it was made to appear by clear and convincing evidence that in arriving at the value of the franchise of the heating company the board of equalization failed to deduct from the value of its capital stock, ascertained in the manner stated, the assessed value of its tangible property, or if it was made to appear by clear and convincing evidence that the heating company had a franchise that it exercised out of the city as well as in the city and that the board of equalization assessed the entire franchise for the benefit of the city, we think the courts would have the right to review the action of the board of equalization in order to prevent the double taxation of the property of the company which would necessarily result if its tangible property was not deducted, or if its franchise upon which it was taxed in other jurisdictions was also taxed in the city.

But after a careful examination of the evidence we are satisfied that the board of equalization did not make a mistake in either of these respects. In place of it being shown by clear and convincing evidence that the board did make a mistake, it is shown by very satisfactory evidence that it did not make a mistake.

The statute, as we have said, requires corporations to make certain reports, and this corporation was furnished a blank on which to make such a report. The statute also gave it the right to go before the board of equalization and present to that board evidence or facts and figures showing that the assessment made by the assessor was excessive or erroneously arrived at, and it did avail itself of this privilege and was heard by the board.

All the evidence heard by the board of equalization is in the record, and on this evidence, including the report made to the assessor, the board of equalization, we may presume, fixed the valuation of the franchise by adopting, as it had the right to do under the circumstances, the valuation fixed by the assessor, except that it saw proper to reduce his valuation $300,000.00, although it would have been entirely justified in not making this reduction.

Looking again to the report made by this corporation, we find that no answers were made to the following questions propounded: "Q. Preferred capital stock? A. ——.  Q. Par value of the preferred stock? A. ——. Q. Real value of the preferred stock? A. ——. Q. Highest price at which preferred stock was sold within twelve months? A. ——. Q. Amount of surplus fund? A. ——. Q. Amount of contingent fund? A. ——. Q. Amount of all other assets? A. ——. Q. Total length of lines operated, owned, leased or controlled in the city? A. ——. Q. Total length of lines operated, owned, leased or controlled elsewhere? A. ——. Q. State the assessed value of tangible property on September 1, 1912. A. ——."

To the following questions the following answers were made: "Q. Amount of capital stock? A. $750,000.00. Q. Amount of capital stock paid up? A. $750,000.00. Q. Par value of common stock? A. $750,000.00. Q. Real value of common stock? A. I don't know. Q. State separately the total amount of gross and net earnings or income of the corporation from all sources for twelve

months next before September 1, 1912.    A. $434,691.31.
Q. State the gross and net income or earnings received
in the city and out of the city on business done in the
city during the twelve months.    A. $434,691.31..  Q.  State
the entire gross receipts of the corporation in the city
and elsewhere during the twelve months.    A. $434,691.31.
Q. State the amount of tangible property and where sit-
uated.   A. About $715,000.00, situated in Meade, Jeffer-
son and Hardin counties.   Q. State amount of undivided
profits.  A. None except plant.''

. From this report it will be seen that the president
gave as assets of the company only the amount of its
common stock and the par value thereof, which he fixed
at $750,000.00.    That he said he did not know the real
value of the common stock.    It will be further noticed
that he fixed the value of the tangible property at
$715,000.00, very nearly as much as the entire par value
of the capital stock, although it would reasonably seem
that if this company had seventy miles of lines in the
city of Louisville and its gross income therefrom was
$434,691.34, the value of its capital stock must have
been more than $35,000.00 over the value of its tangible
property.    It should, however, be noticed that he failed
to give the real value of the capital or the assessed
value of this tangible property as of September 1, 1912.
It will further be noticed that he did not state the length
of lines owned, leased, operated and controlled by the
company in the city or out of the city or that it had any
lines outside the city; and that he fixed the entire gross
receipts derived from business in the city and out of the
city at precisely the same sum as the gross earnings re-
ceived from business done in the city, showing that if
the corporation did any business outside of the city, it
was too small to be taken notice of and that its whole
franchise was exercised in the city.

McDonald also appeared before the board of equali-
zation and was the only witness who testified before the
board, but on his examination he declined to answer per-
tinent questions that would have enabled the board to
get at the real value of the capital stock of this corpora-
tion.

Now when a taxpayer goes before the board of equali-
zation to protest against an alleged erroneous or exces-
sive assessment made by the assessor, the burden is on
him to point out in what particulars the assessor made

an erroneous or excessive assessment, and he must give to the board full and truthful information touching all matters that will enable it to arrive at a correct valuation of the property, and show by convincing evidence that the assessment made by the assessor was excessive or erroneous, and why and in what respects. Unless he does this he will not be heard to complain that the board fixed an excessive valuation on his property.

The board should also on request furnish to the taxpayer the facts and figures on which it proposes to estimate the value of the franchise and information as to the method by which it arrived at its conclusion, so that the taxpayer may be prepared to challenge the facts and figures as well as the conclusion reached by the board. The Commonwealth, and cities as well, are only entitled to a just and fair assessment according to constitutional standards and limitations, and to get at this result the board is entitled to full and truthful information from the taxpayer, and the taxpayer has the right to have the board furnish him the facts, figures and methods by which it estimates the value of the franchise involved.

There is no evidence that the board failed to deduct the value of the tangible property of the corporation in fixing the value of the franchise, nor is there any evidence to show that it did not deduct the value of the franchise exercised out of the city, if any, although the board would have been entirely justified on the report in not making any deduction on this account. If the board, under the report made by McDonald, and on his evidence before the board, had left the franchise assessment as fixed by the assessor, the corporation would not have been entitled to any relief, because McDonald did not furnish to the board any facts or figures that would enable it to ascertain the real value of the capital stock or the assessed value of its tangible property; nor was the board asked to give any information as to how it proposed to ascertain and fix the value of the franchise.

The remaining question relates to the contention of counsel for the heating company that the 10% penalty assessed by the lower court on the amount of tax for which the judgment was given was unauthorized.

Section 2984a, subsection 8, provides, in part, that the city assessor shall make out and authenticate the tax bills on the assessments of franchises, which shall have the same effect as tax bills, ''and said tax bills shall be

due and payable at the same time, subject to the same discounts and penalties, and be collectible by distraint, garnishment and suit, as now provided by law, with respect to other tax bills due the city.'' The obvious purpose of this section was to have these franchise taxes collected in the same manner and at the same time and subject to the same discounts and penalties as other taxes due the city under the general tax laws of the city in force at the time the franchise tax was levied and sought to be collected, not that they should be forever due and payable and be collected in the same manner with the same discounts and penalties as were provided by the general revenue laws of the city in force in 1898 when this franchise statute was first adopted.

It is true that subsection 8 provides that this franchise tax shall be due and payable and subject to the same discounts and penalties and be collectible in such manner as ''is now provided by law'' with respect to other tax bills due the city; and counsel for the heating company contends that as no penalty, or a very trifling one, was imposed on delinquent taxpayers by the general tax laws of the city in force in 1898, no penalty other than those then fixed by the general tax laws of the city can be assessed against this heating company.

This is not our construction of the statute. It was intended to be and is a part of the general revenue laws of the city, and whenever the general revenue laws of the city change the time or manner in which other tax bills due the city shall be due and collectible and prescribe discounts and penalties thereon, the new law becomes at once applicable to franchise taxes and they must be collected according to its terms and provisions prescribed for the collection of other tax bills due the city. Having this view of the matter, we find that in section 2998 of the general revenue laws of the city all tax bills uncollected, in whole or in part, on the first day of May succeeding the day on which they were listed for collection shall be due and thereafter bear interest, and that: ''Upon the first day of July, succeeding the day on which the tax bills were listed with the tax receiver for collection, there shall be added to all tax bills then unpaid a penalty of 10% on the face of the bill, which shall be in addition to the interest above provided for.'' This statute authorized the penalty assessed against the heating company.

Some suggestion is made by counsel for appellant as to the insufficiency of the pleadings to support the judgment, but there is no merit in this contention.

Upon the whole case, we think the judgment should be affirmed, and it is so ordered. .