## Board of Education of Woodford County et al. v. Board of Education of Midway Independent Graded Common School Dist. et al.

(Decided May 15, 1936.)

246

RICHARD P. DIETZMAN for appellants.

E. C. O'REAR and ALLEN PREWITT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At its regular 1934 session the General Assembly of this commonwealth enacted chapter 65, page 197, of the Session Acts of that year, and which is now sections 4363-1 to and including section 4527-80 in Baldwin's 1934 Supplement to Carroll's 1930 edition of the Kentucky Statutes. The act is divided into eleven separate articles, each of which is sectionized, beginning with 1, and some of the sections in some of the articles are themselves subdivided alphabetically. It was intended to be and did provide for a comprehensive system of public schools in the commonwealth and enacted provisions with reference to all phases of that governmental undertaking. Section 3 of article 5 of the act, now section 4399-3 in the Baldwin Supplement, deals with "independent school districts." The two last sentences in it prescribe: "Each independent school district shall establish and maintain at least an approved twelve-grade school service for the white children residing in its district and shall provide by establishment or by contract with another district for at least an approved twelve-grade program of school service for its colored children, except in an independent district embracing a city of the fifth or sixth class. For such districts the county board of education shall provide educational facilities for the colored children." Section 44 of the same article and which is now section 4399-49 of the same Supplement says: "Each board of education shall maintain separate schools for white and colored children residing in its district; provided that the county board of education shall provide for the education of colored children residing within the territorial limits of an independent graded school district embracing a

city of the fifth or sixth class, located in the county."

At that time, and for a long while prior thereto, there was created according to law an independent graded common school district for white children within the territory covered by the plaintiff below and appellee here, Midway Independent Graded Common School District. That district, in accordance with the law under which it was created, was maintained exclusively by taxation of property of white inhabitants only, and in the case of Raley v. County Board of Education of Woodford County, 224 Ky. 50, 5 S. W. (2d) 484, we held, in an appropriate action brought for the purpose of determining the question, that the independent graded white school district of Midway was not required to maintain facilities and provide for the furnishing of free school instruction to the colored pupils residing within its territorial limits; but that the duty to so provide for such colored children rested upon the county board of education of Woodford county, and which declaration, of course, applied to and governed all other similar situations throughout the commonwealth. It was for the purpose of correcting the apparent inequities resulting from that enforced construction by us that section 3 of article 5, supra, of the 1934 statute, was no doubt enacted.

After its taking effect the trustees of the Midway Independent Graded School district and the corporate district itself filed this declaratory action against the Woodford county board of education and its members, seeking a declaration of the rights of the parties (the two school agencies) growing out of a controversy between them as to the constitutionality of sections 3 and 44 of article 5, supra. Upon final submission the court adjudged both of them constitutional and held that they exonerated plaintiff from the duty of providing facilities for, or otherwise defraying any expense toward, educating the colored pupils within its geographical limits in the grades specified in section 3 of article 5 of the 1934 act, supra. It, consequently, held that such duties continued to be imposed upon defendants, i. e., the county board of education of Woodford county and its members. From that judgment defendants prosecute this appeal.

They contended below, and also do so here, (1) that sections 3 and 44 of the article and chapter supra

of the 1934 acts were and are unconstitutional, and therefore invalid, upon the ground that the exclusion in those sections of such independent school districts containing cities of the fifth and sixth classes is an unreasonable and unauthorized classification, and therefore in contravention of sections 59 and 60 of our Constitution, and especially subsection 25 of section 59, inhibiting special legislation "to provide for the management of common schools"; while section 60 of the Constitution prohibits the enactment of any special or local act "by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district or county". But, if mistaken in ground (1), then (2) that a proper construction of section 3 of article 5, supra, when viewed in the light of the entire statute, does not exonerate plaintiff and appellee from the entire financial responsibility of educating, within the grades mentioned, the colored pupils within the geographical limits of defendant. Plaintiff, of course, controverts both of those contentions, and a determination of them will now be made in the order of their classification.

1. We will not attempt a lengthy discussion of the doctrine of legitimate classification permissible in the enactment of general laws in jurisdictions possessing similar constitutional provisions as are contained in sections 59 and 60 of our Constitution. In an effort to avoid encroachments by the courts, as one of the subdivisions of constitutional government, upon those possessed by its legislative department, the right of legislative classification so as not to invade the provisions of either of the sections of the Constitution has become greatly liberalized, and, whensoever the classification is rested upon any reasonable and tangible basis, it will be upheld; otherwise not. Our task is to determine whether the classification made by exempting districts containing fifth and sixth class cities from the duties imposed to furnish educational facilities for colored pupils residing within their boundaries violates such liberal rule of sanctioned classification. We have no hesitancy in concluding that the instant classification is invalid, even under the most liberal rule upholding such right. It is true that the Constitution provides for the classification of cities, and, under that provision the Legislature has the undoubted right to classify them in

accordance with such constitutional provisions, but we have invariably held that such right extends no farther than a classification for municipal governmental purposes. It would be an easy matter to substantiate that statement by reference to leading text-writers on the subject, but, inasmuch as our opinions, in an unbroken line, have so declared, we deem it unnecessary to encumber the opinion with text statements.

In the case of Droege, Circuit Clerk, v. McInerney, Sheriff, 120 Ky. 796, 87 S. W. 1085, 1086, 27 Ky. Law Rep. 1137, we had an exact parallel question before us, and in which we held that the attempted classification made by the statute therein involved was unauthorized and void. The statute therein attacked was one approved March 22, 1904. Prior to its enactment, the sheriff of each county in the state was by virtue of his office chairman of the county board of election commissioners, and the 1904 act amended that law by providing, inter alia, that in counties containing a city of the second class, to which the city of Covington belonged, the circuit court clerk of the county should, by virtue of his office, be chairman of its county board of election commissioners; whilst in all of the other counties the sheriff remained chairman of the board by virtue of his office. Cases are cited in that opinion in which classifications were upheld based upon city classification, although the statute did not directly relate to the municipal government of such city; but there were other sustaining facts for the classification. One of which cases is Winston v. Stone, Auditor, 102 Ky. 423, 43 S. W. 397, 19 Ky. Law Rep. 1483, and the attacked classification was also upheld in the case (prior to the Droege opinion) of Walston v. City of Louisville, 66 S. W. 385, 23 Ky. Law Rep. 1852, but which involved a statute exclusively dealing with a subject pertaining to municipalities of the first class.

In the Droege Case the attacked law related to a general subject appertaining to elections throughout the commonwealth and in declaring it invalid for the reasons adjudged we said in our opinion: "In the case before us there are no distinctive or natural reasons that the sheriff should be a member of the county board of election commissioners in all the counties of the state except those containing a city of the second class, or that the circuit clerk in the latter counties should be

substituted in place of the sheriff. To except counties containing a city of the second class out of the operation of the general rule is to define a class arbitrarily and unreasonably. If the Legislature may do this, it may provide that the county clerk in counties containing a city of the third class shall be a member of the board, or the jailer in counties containing a city of the fourth class, or the coroner in counties containing a city of the fifth class." Later cases involving the same question as relating to general laws (but classified in operation according to the city or county classification with no special applicability to that particular class of cities) are James v. Barry, 138 Ky. 656, 128 S. W. 1070; Kentucky Heating Co. v. City of Louisville, 174 Ky. 142, 192 S. W. 4, 6; Nuetzel, Clerk, v. State Tax Commission, 205 Ky. 124, 265 S. W. 606; Felts, County Attorney, v. Linton, County Judge, 217 Ky. 305, 289 S. W. 312; and Community Hospital v. Barren County Fiscal Court, 244 Ky. 672, 52 S. W. (2d) 896.

Illustrating our position on the question, as declared in the Droege opinion, and which principle was followed in the last-cited cases, we take this excerpt from the Kentucky Heating Company Case, supra: "But in some instances the Legislature has attempted to repeal or modify general laws by special acts applicable to cities that did not concern the municipal affairs of the city, and in these instances the legislation was held invalid, not because the Legislature did not have the right to legislate specially for cities and towns *in matters relating to municipal affairs,* but because the legislation designated as applicable to cities only was an attempt to enact special legislation, in contravention of the Constitution, under the pretense that it concerned only the internal affairs of cities, when the real purpose was not to regulate or control at all municipal affairs, but to exempt the cities from general laws. Illustrations of this class of legislation are to be found in Droege v. McInerney, 120 Ky. 796, 87 S. W. 1085, 27 Ky. Law Rep. 1137; Columbia Trust Co. v. Lincoln Institute, 138 Ky. 804, 129 S. W. 113, 29 L. R. A. (N. S.) 53; James v. Barry, 138 Ky. 656, 128 S. W. 1070." (Our italics.) But it was therein held, however, that the statute attacked in that case, as in violation of the right of the Legislature to classify, related exclusively to municipal matters appertaining to permissible city classification.

An analysis of the other cases with excerpts therefrom would demonstrate as we conclude, beyond the possibility of a doubt that the classification made by exempting school districts containing cities of the fifth and sixth class from the operation of sections 3 and 44 of article 5 of the 1934 act, supra, was and is invalid as based upon an unauthorized classification.

But it does not follow from such conclusion that the exception involved herein, because of its invalidity for the reason stated, has the effect of bringing independent graded school districts wherein there is a city of the fifth or sixth class within the purview of the section supra of the 1934 act, and to thereby impose the duty upon such excepted independent graded school districts to furnish facilities for and to educate the colored pupils within the boundaries of such districts. To so hold would be the exercise by the courts of legislative power and authority, and that, too, in direct conflict with the expressed purpose and intent of the Legislature to exclude such independent school districts from the operation of the statute.

Mr. Sutherland, in the valuable work on Statutory Construction, 1904 edition by Lewis, in volume 1, sec. 306, in speaking upon the direct question here presented, says: "After striking out the exception, if the general words gave the act operation in the excepted counties [independent school districts in this case] such effect would be directly contrary to the expressed intent of the law-maker." That excerpt is supported by these cases cited in note 68 thereto: Kelley v. State, 6 Ohio St. 269; Marsh v. Hanly, 111 Cal. 368, 43 P. 975; Edmonds v. Herbrandson, 2 N. D. 270, 50 N. W. 970, 14 L. R. A. 725; Gilbreath v. Greenville County, 63 S. C. 75, 40 S. E. 1028; State v. Supervisors of Sauk County, 62 Wis. 376, 379, 22 N. W. 572; Spraigue v. Thompson, 118 U. S. 90, 6 S. Ct. 988, 30 L. Ed. 115. See, also, State v. Buckley, 60 Ohio St. 273, 296, 54 N. E. 272, 275.

Speaking to the direct question, the court in the latter case said: "It is urged, however, that, if this exception makes the act unconstitutional, the exception should be disregarded, and the act held valid, as operating uniformly throughout the state. The answer to this is that the court has no lawmaking power, and

cannot extend a statute over territory from which it is excluded by the general assembly. A court can hold a whole act unconstitutional because it is not broad enough,—that is, because it is not of uniform operation throughout the state,—but it cannot extend an act which is too narrow, so as to take in territory which was left out by the general assembly." The other cited cases, as well as authoritative texts, are to the same effect, and we adopted and approved the rule in the Felts Case, supra. So that, notwithstanding the involved exception is invalid for the reasons stated, its nullification will not have the effect to make such excepted independent school districts amenable to the general provisions of section 3 of article 5 of the 1934 act, and which leaves such districts to be controlled, operated, and managed under the law as it existed prior to the enactment of the 1934 statute with reference to the question involved here. Under the law as it existed prior to that statute, as was declared in the Raley case, supra, plaintiffs were not required to perform the duties relating to the education of colored pupils within the boundary of the district, but that they should be performed by defendant, since that opinion held that such colored pupils were by construction of law exclusively within the territorial limits of the county board of education of Woodford county. Such latter conclusion was reached because the plaintiff (district) had been organized only as a white pupil district, and which did not have the effect of changing the school status of the colored pupils within its boundary. The court (in the Raley case) therefore correctly declared the law to be that the contested duties should be performed by defendant.

2. It will be remembered that the last sentence in section 3 of article 5 of the 1934 act (now section 4399-3 of Baldwin's Supplement, supra) says: "For such districts [the excepted ones] the county board of education shall provide educational facilities for the colored children." In support of ground (2) it is learnedly argued that the phrase therein, "educational facilities," embraces only the necessary equipment of a furnished school building, and does not include other expenses embracing tuition incident to the maintenance of the education of colored children. But we are unable to accept that narrow interpretation, although

vigorously and earnestly contended for by learned counsel for defendants. In the first place, if their contention be correct and it should be held that the word "facilities" as employed in the exception embraced nothing but school buildings and their equipment, and was not intended to exonerate such districts from the payment of other educational expense for colored children within the excepted districts, then the same constitutional objection would apply to the extent of such limited "facilities," and the same consequence above pointed out would result.

However, we are unable to discover any logical reason why the word "facilities" should be so narrowed, and section 44 of the same article and act (now section 4399-49 of Baldwin's Supplement, supra) expressly declares that no such narrowing interpretation was intended by the Legislature. It says: "Each board of education shall maintain separate schools for white and colored children residing in its district; provided that the county board of education shall provide for the education of colored children residing within the territorial limits of an independent graded school district embracing a city of the fifth or sixth class, located in the county." That section necessarily confirms our conclusion as to the validity of the exception contained in section 3 of the same article of the 1934 act. Its enactment has the effect to clearly point out and portray the intention of the Legislature in enacting the exception in section 3 of the article referred to, and which was to impose upon county boards of education—not the limited duty of furnishing equipped school houses for colored children within such excepted districts— but likewise to provide and pay for all other expenses "for the education of colored children residing within the territorial limits of an independent graded school district embracing a city of the fifth or sixth class." No other questions than the ones herein discussed and disposed of, as flowing from the unauthorized exception referred to, are presented, and as to them, if any, no expression of our views will be made.

The regular session of the 1936 General Assembly amended the 1934 act so as to eliminate therefrom the contested exception in this case and to make it the duty of all independent school districts throughout the commonwealth to educate the colored children within

their boundaries. Therefore, from and after the taking effect of that amendment, plaintiff herein will be compelled to perform the contested duties herein. But prior to that time the expenses incident to the education of colored children within its boundaries must be borne by defendant and appellant. At the time of the rendition of the judgment appealed from, the 1936 amendment (which has not yet been officially published so that specific reference might be made to it) had not been enacted, and the judgment applied only to the status of conditions existing at the time it was rendered, and which, as we have said, will not be changed until the taking effect of that amendment.

Wherefore, for the reasons stated, the judgment is affirmed, the whole court sitting.