## Board of Education of Taylor County v. Board of Education of City of Campbellsville et al.

Nov. 27, 1942.

262

O. B. Bertram, Fred Faulkner and George O. Bertram for appellant.

Abel Harding, G. J. Rice and G. C. Harding for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Affirming.

This appeal involves the ownership of a school and lot located in Campbellsville, a fifth class city, and used for the education of colored children. The appellant, Board of Education of Taylor County (hereinafter referred to as the county board) filed a petition in equity against appellee, Board of Education of the City of Campbellsville (hereinafter referred to as the city board), asserting title to the property by adverse possession for more than thirty years, and asked that its title be quieted.

The answer and counterclaim of the city board denied the adverse possession of the county board and averred that the latter held the property under an agreement with the school trustees; that the county board transferred and assigned all of its interest in the property to appellee, which expended $1,434.85 in improving same. Appellee asked that the petition be dismissed, or if it be adjudged the title was in appellant, then appellee should recover the amount it expended for improvements.

Of the three last elected school trustees, the two survivors filed an intervening petition averring that the appellee was satisfactorily operating the property as a colored school and they did not desire to interfere therewith,

but asked the court to adjudge that the title to the property was in them for the use and benefit of the colored people of Campbellsville and Taylor County. Appropriate pleadings completed the issues.

The judgment did not decide who had title to the property but merely dismissed the petition, and the county board appeals.

On Sept. 18, 1868, George W. Asper and wife in consideration of $75 cash conveyed the one acre lot in controversy to Robert Hubbard, Simon Hodgen, David Thurman, Jo Chandler and George Hubbard "all of color, as trustees of the Union Schoolhouse of the second part." The granting clause reads:

> "Do hereby sell, grant and convey to the party of the second part & their successors in office and assigns the following described property."

The habendum is:

> "To have and to hold said lot or acre of land unto the said trustees and their successors in perpetual successors (succession) in trust for the use of the Churches that hold meeting there and for School purposes forever. To have and to hold the same with all the appurtenances thereon, to the second party and their successors as trustees as aforesaid and assigns forever with covenants of 'General Warranty'."

It is beyond cavil that the trustees took a fee simple title under this deed and that they held the property in trust for the churches then meeting in the schoolhouse and for the school being taught there. The deed shows a valuable and presumptively commensurable consideration, therefore there could be no right of reverter in the absence of a reversionary clause. Murphy v. Metz, 85 S. W. 1097, 27 Ky. Law Rep. 617; McElroy v. Pope, 153 Ky. 108, 154 S. W. 903, 44 L. R. A., N. S., 1220. There are no words used in the conveyance that even imply an intention of condition, or limitation. Had there been, they would have authorized a reverter upon a breach of condition. If words had been used creating a limitation or condition subsequent, the title would have reverted upon the failure of the intended purpose. Binder v. County Board of Education of Jefferson County, 224 Ky. 143, 5 S. W. (2d) 903; Fayette County Board of Educa-

tion v. Bryan, 263 Ky. 61, 91 S. W. (2d) 990; Williams v. Johnson, 284 Ky. 23, 143 S. W. (2d) 738, 135 A. L. R. 1131. In general the words "for school purposes" are only descriptive of the nature of the only use the school trustees may make of the property and do not create a limitation or condition on the fee. Phillips Gas & Oil Co. v. Lingenfelter, etc., 262 Pa. 500, 105 A. 888, 5, A. L. R. 1495; Bridwell v. McGrew, 228 Ky. 334, 14 S. W. (2d) 1085.

The record shows the two churches which were meeting at the Union Schoolhouse had abandoned same some fifty years ago, since which time the property has been used exclusively as a colored school. The trustees would name the teachers who were employed and paid by the county board. The schoolhouse became so out of repair that it was necessary to build a new one in 1915 or 1916. The evidence is conflicting as to whether any tax money went into this new building, or whether it was constructed entirely from funds raised by the patrons of the school in addition to donations from the Rosenwald Fund and the Slater Fund. Be that as it may, after the new house was erected the county board continued to operate the school in conjunction with the colored trustees until 1936. During that year the city board became obligated to provide a twelve-grade school for colored children residing in Campbellsville, and the county board was relieved of the duty of operating this school, KRS Section 158.100 (K. S. sec. 4399-3), an Act of 1936.

Thereupon the county board entered into a contract renting this property to the city board for $170 per year. The latter paid the rent for a couple of years, after which it and the county board disagreed as to which of them had title to the property. The elected colored trustees ceased to function in 1936 when the city board assumed control of the property and conducted the school.

The deed from Asper conveyed the property to the trustees of the Union Schoolhouse and their successors in office. While successors of the original trustees held the legal title to the property, the school was conducted for many years prior to 1916 by the county board. Section 4439 of Carroll's Statutes (1903 Edition) put title to the school property in the school district trustees and their successors, which was where the deed to the property in controversy placed the title. Section 4426a subd. (11) Carroll's Statutes (1909 Edition) vested the title to

school property in the several districts in the county board, as did Section 4437 of Carroll's 1922 Statutes, which latter was an Act of 1916. Therefore, by operation of law the title to this property was transferred from the successors of the trustees in the deed to the county board.

By an Act of 1934, being 162.010, KRS (sec. 4399-19 K. S.), all school property held for common school purposes was vested in the Commonwealth for the use and benefit of the district board. Some fifteen years before this last mentioned section was enacted, it was written in Board of Education of Jefferson County v. Board of Education of City of Louisville, 182 Ky. 544, 206 S. W. 869.

"Under our system, every common school in the state, whether located in a city or in the country, is a state institution, protected, controlled, and regulated by the state. [Citations] All public school property is held in trust for common school purposes, and all persons holding the title to such property are mere trustees appointed, for the time being, to control and manage the property so as to promote the efficiency of the common school system. Such trustees have no vested right to the property. They may be changed at any time, and new agencies may be appointed to take their place, or their jurisdiction may cease because the territory under their control may pass to some one else."

The School Code was enacted by the General Assembly at its 1934 session, chapter 65, page 197 of the Acts of that year, now Sections 4363-1 to 4527-80, Baldwin's 1934 Supplement to Carroll's 1930 Edition Kentucky Statutes. Section 3 of article 5 and Section 44 of the same article, respectively Sections 4399-3 and 4399-49 of the same supplement, both provide that each independent school district shall establish and maintain schools for colored as well as white children, except in an independent district embracing a city of the fifth or sixth class the county board shall provide educational facilities for colored children. In Board of Education of Woodford County v. Board of Education of Midway, etc., 264 Ky. 245, 94 S. W. (2d) 687, this court held that such a classification relative to fifth and sixth class cities was invalid because not rested upon a reasonable and tangible basis. However, that opinion said that the court had no author-

ity to extend the legislative enactment so that independent school districts in fifth and sixth class cities must provide for the education of colored children. Consequently, that duty was left with the county board.

But the 1936 General Assembly amended Section 4399-3 and omitted that part of the 1934 Act which was held invalid in the Midway case, 264 Ky. 245, 94 S. W. (2d) 687, and provided each independent school district shall provide at least a twelve-grade school for both white and colored children, Section 158.100, KRS (sec. 4399-3 K. S.). This 1936 Act relieved the county board of operating the schools for colored children in fifth and sixth class cities and imposed such duty upon the city board.

Where there is nothing in the statutes to prohibit it, we can see no reason why school property held in trust for the particular purpose of educating colored children should not be utilized therefor by the state agency charged with the duty of carrying it out. The title to this property being vested in the state for the use and benefit of its agency charged with the duty of educating colored children in this district, it is only reasonable and just that the use and control of the property should be placed under the jurisdiction of the city board upon which the statute places the duty of educating them.

Nothing written herein is a conflict with Board of Education of Campbell County v. Board of Education of Newport, 284 Ky. 774, 146 S. W. (2d) 30, 32, which contains this language:

"* * * * the legislature intended an equitable disposition of school properties when a part of one school district is transferred to another, or when districts are merged."

That opinion applied the formula found in KRS Section 162.020 (sec. 4399-5 K. S.) in making an equitable distribution between the county board and the city board where a portion of the former's district was transferred to the latter. In the instant case there was no transfer or merger of a district, or any part thereof; the Legislature merely relieved the county board of the obligation of educating colored children in the Campbellsville district and imposed it upon the city board; and when it did so, it likewise took from the county board the instrumentality by which this was accomplished (the school property) and

gave it to the city board upon which it had placed this burden. If this resulted in a hardship upon the county board, and we cannot see that it did, then it is a matter for the Legislature, and not the courts, to remedy.

Although we disagree with the reasoning used by the chancellor, who based his judgment on a gift from the county board to the city board, he reached the right conclusion and his judgment is affirmed. It has been written often that a correct judgment must stand even though it is reached by fallacious reasoning. Keesee v. Smith, 289 Ky. 609, 159 S. W. (2d) 56, and authorities there cited.

Judgment affirmed.