## Raley, et al. v. County Board of Education of Woodford County.

(Decided March 9, 1928.)

(Rehearing Denied, with Modification, May 11, 1928.)

### Appeal from Franklin Circuit Court.

1. Schools and School Districts.—Acts 1926, c. 82, sec. 1, declaring that every county "shall constitute one county school district provided that in any county in which there is an independent graded school district . . . the county school district shall be composed of the remainder of the county outside of such district, and chapter 172, held not to require independent white graded school district to provide schools for colored children residing within district, and not to deprive county of right to exercise jurisdiction

over education of colored children residing within such district, right to expend funds therefor, or right to receive state aid therefor, in view of Constitution, sec. 187; Acts 1916, c. 24, sec. 142 (Ky. Stats., sec. 4468a-1); Acts 1922, c. 8, (Ky. Stats., Supp. 1924, sec. 4464 et seq.).

2. Courts.—Opinions rendered on summary applications for injunctions to single member of Court of Appeals are not precedents for guidance of Court of Appeals under doctrine of stare decisis even in same case, though concurred in by entire membership of court, but they may be looked to for their persuasive effect.

FOWLER, WALLACE & FOWLER for appellants.

J. W. CAMMACK, Attorney General and J. M. GILBERT, Assistant Attorney General, for appellee

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellants and plaintiffs below, W. H. Raley and William Ditto, are citizens, residents, and property owners in Woodford county, and reside and own property outside of the boundary of any city or graded school district. They filed this equity action in the Franklin circuit court against the county board of education of Woodford county and the state school superintendent to enjoin the former from maintaining a school for, or in any wise contributing to, the education of colored school pupils residing within the geographical limits of the white graded school district, which includes the city of Midway in Woodford county, and which white graded school district was long since established pursuant to then existing law, and to enjoin the latter from paying to the board the state's pro rata for the colored pupils in the district. The ground alleged and relied on for the injunctive relief sought was and is a construction placed by counsel for plaintiffs on certain language in section 1, c. 82, Acts of 1926, p. 282, and which is:

"Every county in this commonwealth shall constitute one county school district; provided that in any county in which there is an independent graded school district, or city school district containing a city of the first, second, third or fourth class, the county school district shall be composed of the remainder of the county outside of such independent district or districts."

The court trying the case sustained the demurrer filed to the petition by the state superintendent, and

plaintiffs declined to plead further as to him. The petition alleged that the county board of education of Woodford county (hereinafter referred to as the board), for the years 1926 and 1927, maintained a common school for colored pupils within the territorial limits of the Midway graded white common school district, including the maintenance of the necessary school building therefor, and that it expended in so doing, not only the state's pupil pro rata for such colored pupils, but likewise a sufficient sum for the purpose was expended by it out of the county school levy, to which the assessable property of colored people in the district contributed. It was also alleged that it was the intention and purpose of the board to continue to do so, unless enjoined by the court, and that it was the intention and purpose of the state superintendent of public instruction to continue to pay to the board the state's pupil pro rata for the colored children of school age residing in such white graded common school district when, according to counsel's contention, it was his duty to make payment thereof to the trustees or the treasurer of the white graded school district, since, as was contended, it was and is the duty of that district to educate such colored pupils, including the maintenance of necessary buildings therefor. The board filed its answer admitting the facts alleged in the petition, and prayed for a construction of the applicable law, and a direction from the court as to its duty. The cause was then submitted and judgment rendered dismissing the petition, to reverse which plaintiffs prosecute this appeal.

The construction of counsel for plaintiff of the above inserted language from the 1926 act is: That it was the intention of the Legislature thereby to make independent graded school districts *geographical* units for public school purposes, with the mandatory duty of providing free public schools for all pupils residing within the geographical limits of the district the same as is prescribed with reference to city schools in the first four classes of cities; and that it was likewise the intention of the Legislature thereby to make the county outside of the graded school districts and the city school districts a unit for educational purposes, and which was to be exclusively and only governed and managed by county boards of education, and that they therefore had no legal right to exercise jurisdiction or control over, or expend any funds for, the education of any pupil either white or

black residing in either class of independent schools, especially as to white graded schools.

Standing alone, and not read in the light of other legislation and prior action taken thereunder, as well as section 187 of the Constitution requiring separate schools for white and colored children, there might be room for counsel's interpretation of the excerpt, supra, from the 1926 act, but the error into which we are convinced they have fallen is their viewing the question from entirely geographical considerations instead of from classification considerations. From 1893 to the enactment of chapter 8, p. 35, Acts 1922, sec. 4464, and its immediately following ones providing for the establishment of graded common schools, was a part of the statutory law in this commonwealth. Chapter 24, p. 162, of the Acts of 1916 (the latter section 4468a1), extended that law so as to provide for the establishment of *colored* graded schools, and, under the authority conferred by each statute, a great many white graded schools as well as colored graded schools were established throughout the commonwealth, one of the former of which was the white graded school including Midway and contiguous territory. The statute with reference to the establishment of white graded schools was repealed by chapter 8, Acts of 1922, supra, and the statute providing for the establishment of colored graded schools was repealed by a prior act. So that there is now no existing law for the establishment of either white or colored graded schools; but those that were established prior to such repeals are continued in existence. In a great many cases coming before us, two of the latest of which are, Commonwealth v. Sebree Deposit Bank, 202 Ky. 589, 260 S. W. 388, and Louisville, Henderson & St. Louis Railway Co. v. Powell County Superintendent, 213 Ky. 563, 281 S. W. 532, we not only upheld the constitutional requirement for separate schools for the two races, but also adjudged that it was competent for either of the races to establish for itself a graded common school within a prescribed territory for the sole benefit of the school pupils belonging to the particular race establishing such school, and when done, the pupils in that territory became an independent school unit as to the pupils of that race residing therein, and that the establishment of such a school by a particular race had no effect whatever upon the school status of the pupils of the other race residing within the same geographical limits. It simply left it where it was before, i. e.,

in the county. It also was held in those cases, especially the last two, that the pupils within that territory and belonging to the race that did not establish the graded school continued as pupils within the county wherein the graded school was established, and were entitled to all of the privileges, including public funds for their education, that are provided for other school pupils both white and black residing within the county outside of such established graded school district. In other words, those opinions construed our various statutes so as to carry out the constitutional provisions for separate schools, and also held that either or both of the races might by complying with the statutes providing for the establishment of graded schools, take themselves out of the geographical limits of the county school unit, and thereby make themselves an independent school unit without in any wise affecting the prior school statute of the pupils of the other race therein that did not do so.

Such was not only our holding, in the latter two cases, but we also held therein that corporate property within the geographical limits of the established graded school should pay the school rate of taxation provided for by the trustees of that district in proportion to the number of pupils of the race that established the district bore to the entire number of pupils within it, and pay at the county rate to the county collecting authority for the pupils of the nonestablishing race within the same geographical limits. We are convinced that it was not the intention of the Legislature, by the enactment of the 1926 act, nor by the enactment of chapter 172 of the same session, to disturb, or in any wise interfere with, the interpretations so made by us. If it had been its intention to do so, it would have been an easy matter to employ language plainly expressive of such intention. On the contrary, we conclude that, when reference is made therein to ''an independent graded school district,'' it was intended to refer only to such racial districts as were theretofore organized under prior existing law, and that it was never intended to burden that race with the duty to also educate the pupils therein belonging to the race not so organizing, who remained in the same school unit as before; i. e., the county.

The question was presented to some members of the court on an injunction motion in the case of Brown, et al. v. Kentucky State Board of Education, et al., in a memorandum opinion rendered on August 25, 1926, and not.

published. On the exact point now under consideration we therein said:

"To construe chapter 82 of the Acts of 1926, which was House Bill No. 460 of that session, as defendants contend would not only result in repealing by the vaguest implication the statutory law as it theretofore existed, but would also force unconstitutional procedure in order to educate at public expense all colored children in independent scholastic districts. If defendant's contention as to the true construction of the act referred to, and kindred ones enacted at the same session, be correct, then each (white) graded school district in the state would be compelled to educate the colored children within its boundaries either by a separate school for them, or by converting the graded school into a mixed one at which the colored children could attend, and which latter result would be in definace of an express provision of section 187 of the Constitution. But adopting the first alternative (maintaining a separate school for the colored children within the district) would, in a majority of instances, reduce the minimum number of pupils required by law for the maintenance of a public school, since in many (white) graded school districts there is not the minimum number of colored children for that purpose living within the district, and no one will contend, we presume, that the trustees of the district could be compelled to maintain such a school outside of the limits of the district. If, however, they could do so, then under the present state of the law the maintenance of the schools would be met by taxation of property of only white taxpayers in the districts, since the present graded schools in the state that have been created by white patrons are not authorized to levy or collect any sort of tax on the property of colored citizens living within the district."

While such opinions, rendered on summary applications to a member of this court, although concurred in by the entire membership of the court, are not precedents for the guidance of the court under the stare decisis doctrine, though rendered in the same case, yet they may be looked to for their persuasive effect.

The interpreted rights, obligations, and duties herein adjudged will, of course, be limited and confined

to those created by the statutory law on the subjects involved that was in force at the time of filing this action and during the period of its pendency, up to and including the time of the rendition of this opinion. Each and all of them are subject to the right of the Legislature by a valid statute to make such changes and alterations as it deems proper within its constitutional authority, and, if done, such duties, rights, and obligations herein declared will thereafter conform to such enactment when made.

Wherefore the judgment is affirmed.

The whole court sitting.