## Board of Education of Barbourville v. Knox County Board of Education.

(Decided June 18, 1935.)

H. H. OWENS and JAMES D. BLACK for appellant.

J. D. TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The questions here involved are governed by the sections of the statute which we shall hereinafter designate, and which have been in operation since 1920. Under them the territory within the limits of cities of the fourth class to which the city of Barbourville belongs, including that outside of the city limits added prior to 1920 for school purposes, constitute a district.

Section 3587a-1 Kentucky Statutes, confers upon the city board of education of cities of the fourth class the general supervision, control, government, and management of the public schools within this district, including the establishing and maintaining high school and the power of administration for separate schools for the white and colored children. It imposes the duty upon the city boards to provide, maintain, and support schools for all colored school children who are bona fide residents of the district and entitled to free tuition, giving them the same benefit under the same government and control given the white children residing within the district who are entitled to free tuition; "provided, however, that where any city of the fourth class has heretofore organized a system of free graded schools for the education of both white and colored children of said cities under and by virtue of the charter of cities of the fourth class, and managed and controlled by the board of education, and has, by ordinance, passed by its general council, separated said systems of graded free schools into graded, free, white common school for the white people of said district and into a graded, free, colored common school for the colored people of said district; * * * or where the board of council of any district embracing a fourth class city shall, by ordinance, provide for a separate system of schools under this law under different boards said schools shall be governed and controlled—the white schools by a white board of education. * * *

But where such provision is not made by ordinance of the board of council, or where such separate boards have not heretofore existed, both of said systems of schools shall be under one board of education." Ky. Stats., sec. 3587a-18.

This section also provides that where two boards of education have been maintained, the board of council of the city embracing such district may, by ordinance, abolish one, and provide that the other shall be the board of education.

Sections 4426-1 and 4426a-1 declare that every county in this commonwealth shall constitute one school district; provided, that in any county where there is an independent graded school district, or city school district, containing a city of the first, second, third, or fourth class, the county school district shall be composed of the remainder of the county outside of such school district or districts.

The power to contract and be contracted with, to sue and to be sued, to acquire and hold property for school purposes, and to establish and maintain common schools of the county, including high schools for white and colored children outside of city or town districts, is vested in the county board of education

Section 4526b-1 contains this language:

"The county board of education in the various counties shall have full power and authority to unite with the governing authorities of any city or town in their respective counties for the purpose of establishing a high school for the joint use of the city or town and such county, and to unite with such authorities for the purpose of maintaining such high school if one be already in existence.

"For this purpose said county boards are hereby given full power and authority to make such contracts as they may deem necessary or proper for the establishment and maintenance of such high schools for the joint use of the county and such city or town. Said contract shall be in writing and shall contain full and complete stipulations as to employment and compensation of teachers, course of study, payment of expenses of the school and the control and discipline of the pupils; provided, that

the total expense of conducting said high school, including estimate of the six per cent (6%) per annum on all investments in buildings, grounds and equipment, shall be pro rated between the two boards of education in proportion to the enrollment respectively of county pupils and pupils residing in said town, city or graded school district, for the term of the first half of the session, and likewise for the term of the second half of the school session, the entire school session being in no case less than eight months."

The Knox county board of education, in the exercise of the power conferred by this section, entered into a written contract with the board of education of the city of Barbourville, to establish and maintain a joint colored high and graded school for the benefit of all colored school children in Knox county and the city of Barbourville. The terms and provisions of the contract are not in controversy, and for this reason we will neither recite nor discuss them.

In pursuance to the contract, a building was erected in which was conducted and maintained the colored high and graded schools for the city of Barbourville and Knox county. The cost of erecting the building was reported by the county board of education to the city board of education, and a settlement therefor between them was satisfactorily made.

This action was instituted by the Knox county board of education to recover of the city board, as per the terms of the contract between them, "an unpaid balance for teachers' salaries of $524.62; coal for the use of the school, $11.86; bus drivers' salaries, $140.60; motor oil for busses, $16.67; gas for same, $16.60; and repairs thereon, $85.60, aggregating $1,206.85."

The city board traversed the petition and affirmatively pleaded that it was a board "for the graded schools for white persons in the city of Barbourville and there was no graded school board of education in the city of Barbourville governing schools for colored pupils residing in the city"; that the funds with which the city board maintained schools under its supervision were collected by taxation of white persons residing, and on their property, within "said graded school district," and that their contract for these reasons "was ultra vires" and "void ab initio."

The answer contains this sentence: "Copy of city ordinance hereto attached marked 'ordinance' for identification." We observe no allegation relating to the ordinance. It is not alleged that it was voted for, adopted, or published; nor is it alleged that any steps had been taken thereunder by either it or the city council. Indeed, other than the sentence we have quoted in relation to this ordinance, nothing appertaining to it is found in the answer. By a third paragraph, it charged that "wrongfully and without legal right" it had paid to the Knox County Board of Education, $2,750.00, and the same "was taken without valuable consideration therefor." It asserted a counterclaim for this sum.

A general demurrer was sustained to the affirmative allegations of the answer, leaving so much of it as was a traverse. It elected to stand by its answer and declined to plead further. Thereupon, in open court, it admitted the county board of education had furnished the city board of education "under the contract set out in the petition, the various items set out in it (the petition) and requested permission to withdraw so much of its answer as denied the furnishing the items sued for," and "agreed that this case be submitted for judgment." On the agreement so made, with the pleadings in the condition stated, judgment was rendered in favor of the Knox county board of education for $838.78, with interest from May 30, 1931, and costs.

It appears from the pleadings that Julius Rosenwald, in conjunction with the Knox county board of education and the city board of education of Barbourville, had erected a building and established and maintained a colored high and graded school for the colored school children eligible to attend high and graded schools residing in Knox county within and without the city of Barbourville, the two boards of education contributing a portion of the cost of the building and the expense of conducting the school, including teachers' salaries, in accordance with the terms of the contract, and that the items now sued for were an unpaid balance claimed by the Knox county board of education to be due it by the city board of education, according to the terms of the contract.

In its brief, the city board of education assails the authority of the two boards to enter into the contract. Also, it insists that the contract was not approved by

the city board of education by a yea and nay vote; that its record discloses that it was executed by the chairman of the board and not the city board of education. The first insistence is premised upon the theory that the city board of education and the school under its supervision is a graded white school, existing in virtue of section 4464, Kentucky Statutes. And that the taxes levied, collected, and expended under its supervision were . levied and assessed on the property of white persons residing in the district. A mere reading of the section definitely discloses that the school under the management and control of the city board of education is distinguishable from a graded school under section 4464, though both of them are a part of the common school system of the county.

In a graded common school district established by a vote of the white voters residing therein, the colored . school children residing in such graded school district are within the jurisdiction of the county board of education, and it is the latter's duty to establish and maintain for their use and benefit suitable education facilities. State Board of Education v. Brown et al., 232 Ky. 434, 23 S. W. (2d) 948; Raley et al. v. County Board of Education of Woodford County, 224 Ky. 50, 5 S. W. (2d) 484; Knox County Board of Education v. Fultz, 241 Ky. 265, 43 S. W. (2d) 707; County Board of Education of Meade County v. Bunger, 240 Ky. 155, 41 S. W. (2d) 931. It is the duty of the county board of education under the sections of the statute here reviewed to maintain schools for colored pupils of the county residing in any graded school district not maintained for colored pupils, whether such colored pupils reside within or outside of graded schools maintained for white pupils. See Knox County Board of Education v. Fultz, supra. But section 3587a-18, supra, expressly requires the board of education of a city of the fourth class to maintain schools for colored pupils residing within the district under its supervision, whether the territory is within or without the city limits.

The argument that the contract between the two boards was, and is, merely the act of the chairman of the city board of education, and not the board itself, is not based upon any allegation of its answer. However, treating the question as if it were raised by appropriate allegations of the answer, the order of the

city board of education pertaining to the contract which is set up in the petition reads:

"On motion unanimously carried, the chairman is hereby authorized to sign contract between the city and county boards of education, relative to building, maintaining and operating the Rosenwald high school for colored children."

Also, a copy of the record of the county board of education showing the execution and delivery of the contract by it to the city board of education is set out in the petition, haec verba. It is further alleged therein that "said contract was prepared in duplicate and the terms thereon agreed upon and was held by each of said board for several days before it was signed on December 6th, 1930, and that each of said board had examined said contract prior to said date, and in fact, had been carrying out together the terms set out in said contract before it was finally signed." These allegations are undenied by the answer. It is presumed, in the absence of a showing to the contrary, that the two boards did their duty, and their proceedings are regular in the execution and delivery of the contract involved. Holton v. Board of Education of Mason County, 176 Ky. 578, 195 S. W. 1108; Lamaster v. Wilkerson, 143 Ky. 226, 136 S. W. 217; Pulliam v. Board of Trustees of Bardstown Graded Common School District, 216 Ky. 266, 287 S. W. 735; Board of Education of Bowling Green v. Simmons, 245 Ky. 493, 53 S. W. (2d) 940; Layson v. Nicholas County Board of Education, 235 Ky. 70, 29 S. W. (2d) 626.

The court properly accepted the undenied allegations of the petition in this respect, as sufficient to show their compliance with the statute. The statutes, supra, expressly conferred on the county board of education the power and authority to make and enter into a contract with the city board of education for the operation and maintenance of a colored high and graded school for colored children residing in the county within the city and outside of it. The two boards, in the execution and delivery of the contract, were within their rights, as the same are conferred by the statutes, pertaining to the subject-matter.

In the record is copied a letter of an employee of the city board wherein it is stated the successors in

office to the members of the board who were in office at the time of the making of the contract involved declined to approve the minutes of the board relating to the contract. The answer contains no allegation relating to this letter or its contents. It is not filed as an exhibit to the answer, and in no manner is it alluded to therein. How it came to be a part of, or in, this record does not appear. In the circumstances, it should be admitted that we are without right to consider it for any purpose. It does not appear that the circuit court in any way, or for any purpose, considered it.

The judgment of the circuit court being in harmony with our views, it is affirmed.